**Linda R. CONSTANTINE, Individually and as Representative of all Others Similarly Situated, Plaintiff,**

v.

**A. MINIS, Jr., Henry H. Minis, and Marguerite M. Trethewey, Defendants.**

**No. CV 495–239.**

United States District Court, S.D. Georgia, Savannah Division.

Dec. 21, 1995.

Walter C. Hartridge, II, Edgar Pomeroy Williams and D. Michael Conner, Savannah, Georgia, for plaintiff.

Glen M. Darbyshire, Savannah, Georgia, John Milton Tatum, Savannah, Georgia, for defendants.

## ORDER

NANGLE, District Judge.

Before the Court are plaintiff's motion to remand the above-captioned action to state court and defendants' motion to dismiss the action for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Because the Court finds that the action was not properly removed to this Court, plaintiff's motion to remand will be granted and the Court does not reach the merits of defendants' motion to dismiss.

## BACKGROUND

This action arises out of the division of proceeds from the sale of a corporation between the corporation's preferred and common stockholders. The corporation, known as Aminco, Inc. ("Aminco"), was a closely-held Delaware corporation with authorized capital stock of 5,000,000 shares of common stock and 1,000,000 shares of preferred stock. The first 675,000 shares of the corporation's preferred stock were designated as "Series A", and the owner of a share of Series A preferred stock was entitled to 15 votes. The remaining shares of preferred stock and all shares of common stock entitled their owner to one vote per share.

Defendant, A. Minis, Jr., was the President of Aminco and sat upon the corporation's Board of Directors. In addition, he owned 278,046 (50.2%) of the corporation's outstanding shares of Series A preferred stock and individually exercised approximately 48% of the voting power of Aminco stock. Minis' son, defendant Henry H. Minis, and his daughter, defendant Marguerite Minis Trethewey, also sat upon Aminco's Board of Directors and owned substantial amounts of the company's preferred and common stock. Thus, A. Minis, Jr. and his children constituted three of the four directors sitting on the company's Board and together owned a controlling interest in the company.

Aminco's principal operating subsidiary was a Georgia corporation known as Carson Products Company ("Carson Products"), which manufactured health and beauty products aimed at the African–American community. In February of 1985, Carson Products created, at the direction of A. Minis, Jr., an Employee Stock Ownership Plan and Trust ("ESOP" or "Plan") under § 401(a) of the Internal Revenue Code. Plaintiff, Linda R. Constantine, was an employee of Carson Products and a participant in the company's ESOP. She and other Carson Products employees participated in the ESOP by making contributions from their income to the Plan.

Concomitant with the creation of the Carson Products ESOP, defendants transferred 232,410 shares of Aminco common stock[1] to the ESOP in exchange for $2 million, which the ESOP had borrowed. In addition, defendants agreed that the value of their Aminco preferred stock would be "frozen" at a price of $27.50 per share. Defendants agreed to freeze the price of their preferred stock so that they would be entitled to certain estate tax benefits. In order to obtain these benefits, however, their stipulation of value had to be permanent and unalterable. Accordingly, Aminco's Certificate of Incorporation provides that the Series A Preferred Stock held by Minis and his children shall be redeemed for the price of "$27.50 per share and no more". The Certificate further provides that

the stock may be redeemed by Aminco's Board of Directors at any time for a price of "$27.50 per share, and no more".

Consistent with the defendants' agreement to freeze the price of their preferred stock, Minis assured plaintiff and the other Carson Products ESOP participants that all equity appreciation in Aminco after 1984 would belong to the common shareholders. Accordingly, all stock valuations obtained by Aminco between 1984 and 1993 consistently attributed a value of no more than $27.50 per share to the company's preferred stock and attributed all of the company's remaining value to the common stock. These valuations were periodically transmitted to the ESOP participants and were represented to reflect the increased value of the ESOP's interest in Aminco Delaware's common stock. In 1994, however, Aminco's preferred stock was given a value that exceeded $27.50 and, as a result, the total value of company's common stock was less than it had been in 1993.

In the spring of 1995, defendants solicited an offer from a corporation called DNL Savannah Acquisition, Inc., to purchase Aminco for $96.2 million. Upon learning of the offer, four officers of Carson Products sent a letter, dated May 5, 1995, to defendants expressing their belief that the provision within Aminco's articles of incorporation entitling the corporation to redeem its preferred shares at the call price of $27.50 was a corporate asset, that the Board of Directors had a fiduciary duty to immediately redeem the preferred stock at that price, and that the Board's failure to redeem the stock would deprive the common shareholders of more than $30 million in sales proceeds if the corporation were sold in accordance with DNL's offer.

In response to the letter, defendants initiated an action in the Chancery Court of the State of Delaware against one of the officers of Carson Products, individually and as representative of all members of the Carson Products ESOP. Defendants sought in the action a declaratory judgment that Aminco's

---

**1.** The Complaint actually alleges that the 232,410 shares transferred by Minis to the ESOP were shares in a Georgia corporation called Aminco, Inc. This corporation was merged into Aminco Delaware in 1990, with each share of the old corporation becoming like shares in Aminco Delaware. This fact has no bearing, however, upon the motions currently before the Court.

directors were not required to exercise the preferred stock redemption rights and that the allocation of the sale proceeds between Aminco's preferred and common shareholders was lawful and proper.

Although defendants' action in the Delaware Court purported to be against all ESOP participants as a class, the ESOP participants allegedly were not provided with either an official, court-ordered notice of the action or the opportunity to "opt out" of the suit. Furthermore, defendants allegedly misrepresented material facts underlying the lawsuit in order to induce a number of the ESOP participants to execute a release that purports to waive any rights that they might have in connection with any claim concerning the division of the proceeds from the sale of the corporation between the preferred and common stockholders.

On August 23, 1995, after receiving limited releases from some Carson Products ESOP participants, defendants dismissed the Delaware suit and sold Aminco to DNL for $96.2 million. At the time of the sale, the Carson Products ESOP owned 187,056 (57.8%) of the 323,514 shares of common stock that were outstanding in Aminco. The ESOP was effectively terminated on or about the date of the sale of Aminco,[2] and a resulting ESOP trust holds the proceeds from the sale of the ESOP's 187,056 shares.

On September 7, 1995, plaintiff brought this action on her own behalf, and as representative of all other similarly situated Carson Products ESOP participants, in the Superior Court of Chatham County, State of Georgia, seeking recovery of the $30 million in sale proceeds that would have gone to Aminco's common stockholders had the Board of Directors redeemed the corporation's preferred stock at the call price of $27.50 per share. Plaintiff's complaint alleges three state-law claims against defendants: breach of corporate fiduciary duties, breach of contract and unjust enrichment. Plaintiff also seeks $15 million in punitive damages, as well as other equitable relief.

Defendants subsequently removed the case to this Court on October 6, 1995, alleging

that the Court has original jurisdiction over this action under § 502(e)(1) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e)(1). On October 11, 1995, defendants filed their motion to dismiss under Fed.R.Civ.P. 12(b)(6) asserting that the Carson Products ESOP is an employee benefit plan subject to ERISA and, as a result, plaintiff's state law claims of breach of fiduciary duty, breach of contract and unjust enrichment are preempted under ERISA § 514(a), 29 U.S.C. § 1144(a). Thus, according to defendants, plaintiff's only right of action is under ERISA and, because plaintiff's complaint fails to allege that defendants are plan fiduciaries under ERISA § 3(21), 29 U.S.C. § 1002(21), plaintiff has not stated a claim under ERISA upon which relief may be granted.

On October 26, 1995, plaintiff filed her response to defendants' motion, as well as a motion to remand the case to the Chatham County Superior Court. In her response, plaintiff relies upon the Fifth Circuit Court of Appeals' decision in *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, (5th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837, 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987), in arguing that her state law claims are not preempted by § 514(a) of ERISA. In her motion to remand, plaintiff asserts that preemption under federal law is a proper basis for removal to federal court only where "super preemption" is present, and her complaint does not allege a state-law claim that falls within the ambit of ERISA's super preemption. Thus, according to plaintiff, this Court is without subject matter jurisdiction over this action and must, therefore, remand the case to the Chatham County Superior Court.

### DISCUSSION

Plaintiff's motion to remand requires the Court to consider, as a threshold matter, whether this action has been properly removed to this Court. Ordinarily, a defendant can remove an action to federal court only if the action could have been brought in federal court in the first instance; that is, the federal

---

**2.** Carson Products was merged into Aminco as part of Aminco's sale to DNL.

court must have original jurisdiction over the matter. *See* 28 U.S.C. § 1441; *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Because the parties in this case are not diverse as required for jurisdiction under 28 U.S.C. § 1332,[3] defendants' removal of this action could only have been predicated upon 28 U.S.C. § 1441(b).[4] Section 1441(b) permits removal of an action without regard to diversity of citizenship where federal-question jurisdiction exists under 28 U.S.C. § 1331. *See Brown v. Connecticut General Life Ins. Co.,* 934 F.2d 1193, 1195 (11th Cir.1991).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (*citing Gully v. First National Bank,* 299 U.S. 109, 112–113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936)). The plaintiff is, then, master of her complaint and can generally avoid federal jurisdiction by omitting claims that arise under federal law. *Id.* Accordingly, a defendant's assertion of a defense that raises a federal question, such as preemption under federal law, generally will not support removal:

> Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court.

*Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (citation omitted).

Defendants' assertion of preemption under § 514(a) of ERISA[5] does not, there-fore, support removal of this action from state court. *See Id.* 481 U.S. at 64, 107 S.Ct. at 1547 (noting that ERISA preemption under § 514(a), without more, does not convert a claim grounded in state law into a federal cause of action); *Caterpillar,* 482 U.S. at 398, 107 S.Ct. at 2432 ("The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the [National Labor Relations Act] does not establish that they are removable to federal court."); *Warner v. Ford Motor Co.,* 46 F.3d 531, 534 (6th Cir.1995) (noting that, although § 514(a) allows ERISA to preempt state laws "relating to" matters governed by ERISA, it does not create a federal cause of action).

The Supreme Court has, however, recognized an exception to the well-pleaded complaint rule where Congress has "so completely pre-empted a particular area that any civil complaint raising this select group of claims is necessarily federal in character". *Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. at 1546–1547. "The effect of this exception is to convert what would ordinarily be a state claim into a claim arising under the laws of the United States." *Brown,* 934 F.2d at 1196 (citations omitted). This exception to the "well pleaded complaint rule" is known as "complete" or "super preemption", so as to distinguish it from ordinary preemption under § 514(a). *See e.g., Brown,* 934 F.2d at 1196 ("super preemption"); *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 354 (3rd Cir.1995) ("complete preemption"), *cert. denied,* —— U.S. ——, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995); *Warner v. Ford Motor Co.,* 46 F.3d 531, 534 (6th Cir.1995) ("complete preemption").

In *Metropolitan Life,* the Supreme Court held that the "complete preemption" exception applies to § 502(a) of ERISA, 29

---

**3.** *See* Complaint ¶¶ 1, 4–5.

**4.** Defendants' notice of removal does not specify whether their removal is based upon subsection (a) or (b) of § 1441.

**5.** § 514(a) of ERISA, 29 U.S.C. § 1144(a), provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. The Supreme Court has made clear that "[a] law

'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to the plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97 [103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490] (1983). Defendants contend in their motion to dismiss that plaintiff's state law claims "relate to" the Carson Products ESOP and are, therefore, preempted under § 514(a).

U.S.C. § 1132(a), which is ERISA's civil enforcement scheme. *Metropolitan Life*, 481 U.S. at 67, 107 S.Ct. at 1548. Thus, a state-law claim seeking the sort of relief provided for in § 502(a) is essentially transformed into a claim which is "federal in character" and which will support removal jurisdiction. *Id.*

The question, then, is whether plaintiff's state-law claims fall within the scope of ERISA § 502(a). Clearly, they do not. § 502(a), in relevant part, provides:

A civil action may be brought—

(1) by a participant or beneficiary—

　(A) for the relief provided for in subsection (c) of this section, or

　(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title ...

29 U.S.C. §§ 1132(a)(1), (2), (3) and (4).[6] The scope of § 502(a) is thus limited to the enforcement of ERISA and plans covered by ERISA, and it is clear that plaintiff's claims have absolutely nothing to do with either ERISA or the Carson Products ESOP.[7] Plaintiff brings this action as the former beneficial owner of Aminco stock against defendants in their capacity as former majority shareholders, directors and officers of Aminco for alleged violations of state corporate law. The essential issue in this case is whether the proceeds of the sale of Aminco were properly divided among the corporation's shareholders. This is an issue that is completely grounded in state law and touches upon none of the policy concerns reflected in § 502(a) of ERISA.

Defendants' assertion that the ESOP, rather than the individual ESOP participants, was the true shareholder of the Aminco common stock does not alter the analysis. The Eleventh Circuit has specifically held that "the mere fact that an ERISA plan is a plaintiff in a lawsuit" does not create a federal question under ERISA for the purpose of removal jurisdiction. *Brown*, 934 F.2d at 1551. Thus, the fact that plaintiff brought this proposed class action on behalf of all participants in the Carson Products ESOP does not bring plaintiff's claims within the scope of ERISA § 502(a).

### CONCLUSION

There are two different standards of preemption under ERISA: one, "complete preemption" under § 502(a), is used solely to determine whether removal jurisdiction exists; the other, ordinary preemption under § 514(a), is used in all other instances to determine whether a plaintiff can maintain a state-law claim in a case that involves an ERISA plan. Because plaintiff's claims do not fall within the scope of § 502(a)'s "complete preemption", this Court is without jurisdiction to entertain this action and does not reach the question of preemption under § 514(a). Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to remand be and is granted. This action is, pursuant to 28 U.S.C. § 1447(c), remanded to the Chatham County Superior Court.

**IT IS FURTHER ORDERED** that all other motions in this action shall be remanded to the Chatham County Superior Court along with the case.

---

**6.** The remaining provisions of § 502(a) clearly do not pertain to this case. *See* 29 U.S.C. §§ 1132(a)(5), (6), (7), (8) and (9).

**7.** The Court is, of course, assuming that the Carson Products ESOP was an "employee benefit plan" within the meaning of § 3(3) of ERISA, 29 U.S.C. § 1002(3).