William GABNER, et al.

v.

METROPOLITAN LIFE INS. CO., et al.

No. 1:95–CV–927.

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 27, 1996.

Ethan L. Shaw, Moore Landrey Garth Jones Burmeister & Jones, Beaumont TX, David L. Sheller, Houston, TX, for plaintiffs.

Robert J. King, Liddell Sapp Zivley Hill & LaBoon, Houston, TX, for defendants.

### MEMORANDUM RE: PLAINTIFFS' MOTION TO REMAND

HINES, United States Magistrate Judge.

This suit was filed originally in the 136th Judicial District Court, Jefferson County, Texas on September 29, 1995, and removed to this court on October 16, 1995. Pending is plaintiff's motion to remand.

The motion to remand was referred to the undersigned United States Magistrate Judge by United States District Judge Thad Heartfield for determination by order dated December 7, 1995. A hearing on plaintiffs' motion to remand was set for early February 1996, but was continued after leave was granted to the Secretary of Labor to file a brief as amicus curiae in support of plaintiffs' motion to remand. A hearing was thereafter convened on March 4, 1996. The motion only recently has become ripe for decision.[1]

### I. Factual Background

William Gabner ("Gabner"), a Texas resident, resides in Humble. Gabner was employed by Amoco and participated in Amoco's employee welfare benefit plan. Amoco offered its employees life insurance coverage through a group policy issued by Metropolitan Life Insurance Company ("MetLife"). Amoco provided basic coverage at no cost, and employees could opt to purchase supplemental insurance. While employed by Amoco, Gabner received $53,000 basic coverage, and elected for supplemental coverage of $53,000, bringing the face amount of the policy to $106,000.

The policy provided that within 31 days of cessation of the employee's life insurance policy due to termination of employment, the employee could apply to convert the policy to

---

1. On March 1, 1996, the Judicial Panel on Multidistrict Litigation entered a conditional transfer order transferring this case to the docket of the Honorable Gary L. Lancaster, Western District of Pennsylvania, pursuant to 28 U.S.C. § 1407. Counsel for plaintiffs thereafter filed an objection to that conditional transfer order. A hearing was held before the Judicial Panel on Multidistrict Litigation on May 31, 1996, and on June 6, 1996 the Panel, reciting the posture of the case, the absence of any party's support for transfer, and the convenience of parties and witnesses, entered an order vacating the conditional transfer order.

an individual policy of life insurance at a face amount less than or equal to the amount previously obtained under the group policy. The conversion provision allowed terminated employees to obtain policies without medical examination. Further, premiums were specific to the conversion policies and were set at levels more favorable than those available to persons seeking life insurance without the benefit of a conversion right. Amoco paid for administrative costs in connection with conversion rights.

After his termination from Amoco on August 15, 1991, plaintiff within 31 days filed an application for conversion with MetLife's central head office in Tulsa, Oklahoma. He was referred to a local agent in Humble, Texas, defendant Barbara Patterson ("Patterson"). Patterson met with Gabner and his wife and explained available options. Gabner and his wife were shown at least three individual policies, one of which was the conversion policy. Gabner purchased the conversion policy, with an annual premium of $2493.90, and made payments in 1991, 1992, and 1993. He allowed the policy to lapse in 1994.

Gabner now claims defendants fraudulently induced him to purchase the conversion policy by representing that its qualities were superior to the qualities of the other policies presented, and that it was less expensive than the other policies. Specifically, he claims he was fraudulently induced by representations of MetLife agents and MetLife advertising that the policy he purchased would be paid up in 10 years. He then learned after purchase that the policy would not be paid for in ten years, and that, in fact, at least one nonconversion policy was cheaper. Gabner has never made a claim for benefits under the policy.[2]

Gabner's original petition in state court asserts causes of action under the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA)[3] and Article 21.21 of the Texas Insurance Code. The petition also alleges common law causes of action, viz., violation of the duty of good faith and fair dealing, fraud and fraudulent inducement against MetLife and agents Patterson and Pamela Carroll.[4] Gabner seeks to obtain either the product he alleges he contracted for, or rescission of the individual life insurance contract and return of funds paid. In addition, he seeks punitive damages, statutory trebling of damages under the DTPA, and attorney's fees.

## II. The Motion to Remand

Plaintiffs moved to remand the case, arguing that because Gabner makes no claim for benefits under an employee benefit plan governed by ERISA[5] but only brings state law claims the dispute does not affect relations among principal ERISA entities and is not preempted.

The Secretary of Labor was granted leave to file a brief as amicus curiae. The Secretary argued that whether Gabner's claims are "preempted" under ERISA § 514, 29 U.S.C. § 1144, because they "relate to" an ERISA plan, is irrelevant to determination of the motion to remand. Rather, the proper focus, the Secretary argued, is whether the claims fall within ERISA's civil enforcement

---

**2.** The parties' submissions contain few details about the claims of the second plaintiff, Patricia Aldrup ("Aldrup"), a Texas resident residing in San Antonio. According to the petition filed in state court, Aldrup purchased in 1988 an individual life insurance policy with a face amount of $20,000. She alleges she was told at the time she purchased the policy that if she cashed in a competitor's policy and paid an additional $822 that the first 5 years of premiums would be paid and that only 6 years of premiums would remain. She alleges she was later informed that she would have 9 years of premiums remaining.

Aldrup's claims do not form the basis of removal and were removed pursuant to 28 U.S.C. § 1441(c), subject to 28 U.S.C. § 1367(c). Because there is no independent basis for federal subject matter jurisdiction over Aldrup's claims, their future in this court rises or falls with the determination whether Gabner's claims were properly removed.

**3.** Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 1987).

**4.** While the action was pending in state court, plaintiffs' motion to nonsuit MetLife employee Jorge Ramirez was granted. Yet another MetLife employee, John McCarthy, was dismissed by this court at plaintiff's instance.

**5.** Employee Retirement Income Security Act of 1974 (ERISA) (codified in scattered sections of the United States Code).

provisions, ERISA § 502(a), 29 U.S.C. § 1132(a). The Secretary argues that Gabner's claims fall within none of the civil enforcement provisions.

While acknowledging the correctness of the Secretary's focus on the civil enforcement provisions, defendants disagree that none of those provisions is applicable.

## III. Ordinary and Complete Preemption Under ERISA

### A. Preemption Generally

■ Under the Supremacy Clause of the United States Constitution, U.S. CONST. art. VI, cl. 2, state laws that interfere with or are contrary to federal law are invalidated. *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). Under the Supremacy Clause, Congress may preempt a field—and supersede any state regulation in that area—in one of three ways. First, Congress may expressly state that it intends to preempt a field. Second, preemption of a whole field will be inferred when the domain is one in which the scheme of federal regulation is comprehensive and " 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.' " *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)); *California Fed. Savings & Loan Ass'n v. Guerra*, 479 U.S. 272, 280–81, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987). Finally, when Congress has not completely displaced all systems of state regulation, federal preemption will be found on those specific issues for which there is an actual conflict between state and federal law and for which compliance with both is an impossibility. *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).

■ ERISA preempts virtually all state laws relating to employee benefit plans.[6]

ERISA contains an express preemption provision, ERISA § 514(a), which is broadly worded: "[T]he provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to an employee benefit plan...." A state law "relates to" an employee benefit plan " 'if it has connection with or reference to such a plan.' " *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 8, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). The breadth of the preemption provision was designed to supplant all state regulation of employee benefit plans in favor of a uniform federal system. *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). Only certain state criminal laws and state laws regulating insurance, banking, or securities are exempted from the virtual wholesale preemption. 29 U.S.C. § 1144(b)(2)(B)(4), (b)(2)(A).

### B. Removal and the Well–Pleaded Complaint Rule

It does not follow, however, that any state court petition which alleges state law violations but which implicates, at some level, an employee benefit plan is removable from state to federal court. Removal and preemption are separate concepts.

■ Removal of an action involving an ERISA-governed plan turns on the application of the well-pleaded complaint doctrine and its corollary, the complete preemption exception. Under the well-pleaded complaint doctrine, a cause of action arises under federal law, and is properly removable, only if a federal question is presented on the face of the complaint as an essential element of the claim. *See, e.g., Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10–11, 103 S.Ct. 2841, 2846–47, 77

---

6. An employee benefit plan includes an "employee welfare benefit plan," which is defined as "any plan, fund, or program ... established or maintained by an employer or by an employee organization ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." ERISA § 3(1), 29 U.S.C. § 1002(1).

L.Ed.2d 420 (1983). Even if a defense to a state law action implicates federal law, as does preemption, the action is not removable, because the defense generally does not appear as an element of the complaint. *Gully v. First Nat'l Bank,* 299 U.S. 109, 115–18, 57 S.Ct. 96, 98–100, 81 L.Ed. 70 (1936).[7] "Put another way, federal preemption that merely serves as a defense to a state law action (sometimes called 'conflict preemption') does not confer federal question jurisdiction." *Rice v. Panchal,* 65 F.3d 637, 639 (7th Cir. 1995).

■■■■ However, a narrow exception to the well-pleaded complaint rule exists when Congress has evinced an intent to so completely preempt a particular area that any civil complaint raising that select group of claims is to be viewed as arising under federal law and, therefore, is necessarily federal in character. *Taylor,* 481 U.S. at 63–64, 107 S.Ct. at 1546. "If a state law claim has been 'displaced' and therefore completely preempted by § 502(a), then a plaintiff's state law claim is properly 'recharacterized' as one arising under federal law.[8] ...

Thus, complete preemption under § 502(a) creates federal question jurisdiction whereas conflict preemption under § 514(a) does not." *Rice,* 65 F.3d at 640 (citations omitted); *Anderson v. Electronic Data Sys. Corp.,* 11 F.3d 1311, 1315 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 55, 130 L.Ed.2d 14 (1994).

In *Taylor,* the Supreme Court looked to the legislative history behind ERISA § 502(a), which contains ERISA's civil enforcement provisions, and concluded that common law causes of action filed in state court that fall within the scope of § 502(a) are removable to federal court under 28 U.S.C. § 1441(b), even though the defense of preemption does not appear on the face of the complaint.[9]

■■■■ However, if the state law claim raised in a complaint removed to federal court is one that is preempted by § 514(a), but is *not* one which can be characterized as falling under § 502(a), the federal court is without removal jurisdiction and cannot resolve the ordinary preemption issue; "[i]t lacks the power to do anything other than

---

7. Preemption principles are similar under the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.,* and ERISA. *See, e.g., Taylor,* 481 U.S. at 64–66, 107 S.Ct. at 1546–47. In *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 398–99, 107 S.Ct. 2425, 2433, 96 L.Ed.2d 318 (1987), an LRMA case, Justice Brennan wrote for a unanimous Supreme Court:

> [T]he presence of a federal question ... in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.... [A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing. Congress has long since decided that federal defenses do not provide a basis for removal.

8. Thus, "a garden variety state law cause of action, not particularly troublesome in circumstances not involving employee benefits, may be preempted where it is used to remedy exactly the type of illegal activity proscribed by ERISA."

*Tingey v. Pixley–Richards West, Inc.,* 953 F.2d 1124, 1130–31 (9th Cir.1992).

9. ERISA § 502(a), 29 U.S.C. § 1132(a), outlines ERISA's civil enforcement provisions. Those portions applicable to a suit by a plan beneficiary provide:

> A civil action may be brought—
> (1) by a participant or beneficiary—
> (A) for the relief provided in subsection (c) of this section, or
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
> (3) by a participant, beneficiary, or fiduciary
> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
> (B) to obtain other appropriate equitable relief
> (i) to redress such violations or
> (ii) to enforce any provisions of this subchapter or the terms of the plan;
> (4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;
> ....

remand to the state court where the preemption issue can be addressed and resolved." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995); *Zuniga v. Blue Cross & Blue Shield,* 52 F.3d 1395, 1399 (6th Cir.1995); Janice M. Radlick, *Removing ERISA Cases After Warner v. Ford Motor Co.,* 74 MICH.B.J. 1044, 1046 (1995).[10]

## IV. Analysis

### A. The Conversion Rights at Issue Are Governed by ERISA

Gabner's conversion right existed only in relation to the underlying group plan, which all parties agree is an ERISA plan. As summarized by defendants' brief, "Gabner received insurance (i) at a level provided for under the Group Life Plan, (ii) at rates provided for under the Group Life Plan, (iii) without evidence of insurability, as provided for under the Group Life Plan, and (iv) as a result of payments by his employer, as called for under the Group Life Plan." Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Remand, at 6.

Although courts disagree on whether claims arising under an individual policy previously converted from a group policy continue to be governed by ERISA, there is widespread unanimity that claims arising from the right to convert (e.g., "issues concerning the availability of a conversion policy, or continuation coverage, or the formation of an individual contract of insurance," *Vaughn v. Owen Steel Co.,* 871 F.Supp. 247, 249 (D.S.C. 1994)) are preempted by ERISA.[11] The reasoning in these cases rests in significant part on one or more of the following factors: that the insured obtained the individual policy only because of a conversion right provided under the group plan; that the group plan allowed the insured to obtain the individual policy without evidence of insurability; that certain premiums were paid by the employer for the individual conversion policy; and that the group plan governed the maximum amount of the individual policy.

■ All of these factors are present and equally persuasive in this case. Accordingly, the conversion to an individual life insurance policy in this case is governed by the provisions of ERISA.

### B. Survey of the Civil Enforcement Provisions

■ As noted, the general rule is that when the relief sought by a plaintiff asserting state law claims clearly falls within the lan-

10. "[T]he artful pleading doctrine permits removal when 'federal law requires [the plaintiff] to rely on a federal remedy.' The artful pleading doctrine would afford little protection if a plaintiff could avoid federal jurisdiction simply by leaving out material facts." *Olguin v. Inspiration Consol. Copper Co.,* 740 F.2d 1468, 1473 (9th Cir.1984) (quoting *Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367, 1371 n. 5 (9th Cir. 1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985)). "We conclude that in determining whether a complaint is 'artfully pleaded,' the court is not bound to consider only the facts pleaded in the complaint but may look elsewhere to ascertain facts that would appear in a 'well pleaded' complaint. If on those facts it is apparent that the plaintiff can only proceed under federal law, the complaint is properly removable." *Id.; see also Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 997 (9th Cir.1987); *Turk v. General Motors Corp.,* 637 F.Supp. 739, 740 n. 1 (E.D.Mich.1986); *Kilmer v. Central Counties Bank,* 623 F.Supp. 994, 999 (W.D.Pa.1985).

Many of the facts summarized in the discussion of background facts, *see supra* sec. I, are not contained in plaintiffs' original petition filed in state court. The original petition does not mention, for example, Gabner's employment with Amoco, the existence of the group life insurance plan, Gabner's exercise of his conversion right, or the status of MetLife as an administrator or fiduciary with respect to the group plan. However, these facts are properly derived from defendants' answer and other submissions to the court.

11. Courts which have held or suggested that the actual conversion of a policy under an ERISA plan to an individual policy is governed by ERISA include: *Greany v. Western Farm Bureau Life Ins. Co.,* 973 F.2d 812, 817 (9th Cir.1992); *McCale v. Union Labor Life Ins. Co.,* 881 F.Supp. 233, 235–36 (S.D.W.Va.1995); *Vaughn,* 871 F.Supp. at 249; *Mimbs v. Commercial Life Ins. Co.,* 818 F.Supp. 1556, 1561–62 (S.D.Ga.1993); *Beal v. Jefferson–Pilot Life Ins. Co.,* 798 F.Supp. 673, 675 (S.D.Ala.1992); *Nechero v. Provident Life & Accident Ins. Co.,* 795 F.Supp. 374, 378–80 (D.N.M.1992); *Rasmussen v. Metropolitan Life Ins. Co.,* 675 F.Supp. 1497, 1506–07 (W.D.La.1987); *Mays v. UNUM Life Ins. Co.,* No. 95 C 1168, 1995 WL 317102, at *3–*4 (N.D.Ill. May 23, 1995).

guage of the civil enforcement provisions, the complaint is recharacterized in terms of federal law and is removable.

The parties have not pointed to, and the court's independent research has not located, any case discussing preemption by ERISA's civil enforcement provisions of state law claims alleging misrepresentation of the purchase price of a conversion life insurance policy, the precise issue involved in this dispute. Thus, the court briefly describes each of the civil enforcement provisions.

The first of the civil enforcement provisions is § 502(a)(1)(A). This section authorizes a civil action for relief provided in § 502(c), which constrains plan administrators to respond to requests for information by plan participants or beneficiaries within 30 days, or face penalties of up to $100 per day. The second section, § 502(a)(1)(B), authorizes civil actions by plan participants or beneficiaries to recover benefits due under the terms of a plan, to enforce rights under the terms of a plan, or to clarify rights to future benefits under the terms of a plan. The next of the civil enforcement provisions, § 502(a)(2), authorizes a civil action for appropriate relief under section ERISA § 409, 29 U.S.C. § 1109. The fourth section, § 502(a)(3), allows a plan participant, beneficiary, or fiduciary to bring an action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." ERISA § 502(a)(3). The last of the civil enforcement provisions authorizes the Secretary, a participant, or beneficiary to seek appropriate relief in the event of a violation of ERISA § 105(c), 29 U.S.C. § 1025(c), a section which pertains to statements to be furnished by ERISA plan administrators to participants.

The defendants argue that plaintiffs' claims are removable under complete preemption only under sections 502(a)(1)(B) and 502(a)(3). Thus, these are the only sections examined by the court.[12]

## C. Asserted Bases For Removal

### 1. § 502(a)(1)(B) (Distinction between complaints on policy and on policy terms)

Section 502(a)(1)(B) authorizes civil actions by plan participants or beneficiaries to recover benefits due under the terms of a plan, to enforce rights under the terms of a plan, and to clarify rights to future benefits under the terms of a plan.

The most common scenario for application of the complete preemption doctrine involves cases in which benefits under an ERISA-covered plan were denied and the plaintiff seeks state court action to enforce his rights to those benefits. This type case falls within § 502(a)(1)(B). "The common thread running through these cases is that complete preemption is required where a state law claim cannot be resolved without an interpretation of the contract governed by federal law." *Rice,* 65 F.3d at 644.

 In *Tingey v. Pixley–Richards West, Inc.,* for example, an employee was abruptly terminated with no explanation days after his employer received notice that the employee had incurred large insurance charges in connection with the complicated delivery of a son born with spina bifida. 953 F.2d 1124 (9th Cir.1992). The employee's complaint in state court raised various state law causes of action; but the essential focus of the complaint was that plaintiff was terminated because his employer did not want to pay his insurance benefits. When "stripped of their state law disguises," [13] *id.* at 1130, the claims concerned nothing more than a dispute as to "the handling and disposition of [a] medical

---

**12.** Section 502(a)(1)(A) has no application to the present suit. Although MetLife was an ERISA fiduciary in this case, the third section, § 502(a)(2), is not applicable because, although § 409, referenced in § 502(a)(2), provides for a species of catch-all relief, that relief must be read in light of the language of § 409, which was intended to protect the entire plan, not individual

beneficiaries. Finally, section 502(a)(4) is wholly inapplicable to the dispute at hand.

**13.** In applying the well-pleaded complaint rule, the court must look beyond the words of the complaint to the substance of the claim alleged. *Cf. Rozzell v. Security Servs., Inc.,* 38 F.3d 819, 822 (5th Cir.1994).

benefits insurance claim," *id.* at 1131, and as such were preempted by the civil enforcement scheme of ERISA. But the Ninth Circuit noted that if some motivation other than a desire not to pay benefits were alleged, such as age discrimination, the claims would not be preempted by ERISA.

Similarly, in *Lazorko v. Pennsylvania Hospital,* the plaintiff sought treatment and was refused, in violation of the benefits plan. No. A.95–CV–6151, 1996 WL 7992 (E.D.Pa. Jan. 4, 1996). "Although shrouded in language of state law, ... [t]hese allegations clearly fall within the scope of ERISA's civil enforcement provision." *Id.* at *1; *see also Sofo v. Pan–American Life Ins. Co.,* 13 F.3d 239, 241 (7th Cir.1994) (employee enrolled in group health insurance plan whose benefit claims were denied after insurer learned she had made false statements about her medical history on the enrollment application brought state claim for wrongful recision; "[o]nce [plaintiff's] claim is reconfigured as a claim by a participant for denial of benefits, the district court's removal jurisdiction becomes clear"); *Mays,* 1995 WL 317102, at *5 (plaintiff's decedent insured at $50,000 under a group life insurance policy converted the policy prior to her death to a $50,000 individual policy; when plaintiff, the insured's sister, later made a claim for benefits, the insurer paid only $20,000, claiming that the insured's group benefit at the time of termination and conversion was only $20,000; suit alleging breach of contract and vexatious delay of payment was one "to recover a level of benefits allegedly due under the terms of a plan" and was completely preempted under § 502(a)(1)(B)).

■ Gabner's suit is not one which can be characterized as arising under § 502(a)(1)(B). "Plaintiff obtained the conversion benefit to which he was entitled under the terms of his ERISA plan. He is not seeking benefits under the conversion policy, but argues that the cost of the policy was misrepresented by the insurance carrier that sold him the policy." Brief of the Secretary of Labor as Amicus Curiae in Support of Plaintiff's Motion for Remand, at 8.[14]

**2. § 502(a)(3) (Deception by a fiduciary)**

Subsection 502(a)(3) allows a plan participant, beneficiary, or fiduciary to bring an action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." ERISA § 502(a)(3).[15] In *Varity Corp. v. Howe,* the Supreme Court recently interpreted 502(a)(3) as a "catchall" provision providing equitable relief for a broad class of individual claimants:

> Four of [§ 502(a)'s] six subsections focus upon specific areas, *i.e.,* the first (wrongful denial of benefits and information), the second (fiduciary obligations related to the plan's financial integrity), the fourth (tax registration), and the sixth (civil penalties). The language of the other two subsections, the third and the fifth, creates two "catchalls," providing "appropriate equitable relief" for "any" statutory violation. This structure suggests that these "catchall" provisions act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere remedy.... [T]here is nothing in the legislative history that conflicts with this interpretation.

—— U.S. ——, at ————————, 116 S.Ct. 1065, at 1077–78, 134 L.Ed.2d 130 (1996).

---

**14.** Defendants argue that Gabner, in seeking the relief of a life insurance policy that conforms to the insurers' alleged representations, "is trying to enforce or clarify an alleged commitment made pursuant to an ERISA plan." Defendants' Brief in Response to the Department of Labor's Amicus Curiae Brief, at 5. In the course of arguing the applicability of § 502(a)(1)(B), defendants quote *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321, 1335 (5th Cir.1992), *cert. denied,* 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1993): "When a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is § 502(a)(1)(B)." But plaintiff's claim here is for the *policy itself,* not for release of benefits under a coverage term of the policy that has been triggered by some qualifying event.

**15.** For a Fifth Circuit case applying this provision, see *Anderson v. Electronic Data Sys. Corp.,* 11 F.3d 1311 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 55, 130 L.Ed.2d 14 (1994).

### a. MetLife Is a Fiduciary

The conversion of the policy, as discussed above, was governed by ERISA. But before any of the defendants can be held liable under § 502(a)(3), it must be determined whether those defendants fit within the ERISA definition of fiduciary.[16]

The fiduciary label has been given "a liberal construction in keeping with the remedial purposes of ERISA," *American Fed'n of Unions Local 102 v. Equitable Life Assurance Soc'y*, 841 F.2d 658, 662 (5th Cir.1988), and is appropriate to describe the insurance company itself. At least one court, consistent with the broad definitional language of "fiduciary" in 29 U.S.C. § 1002(21), has held that a group health insurer is a fiduciary under ERISA with respect to a request by terminated employee of the corporation sponsoring the plan to convert his or her group coverage to an individual policy when the insurer possesses the authority to grant or deny the request. *See Vogel v. Independence Fed. Sav. Bank*, 728 F.Supp. 1210, 1230 (D.Md.1990). Specifically, the *Vogel* court found that the insurer fit within 29 U.S.C. § 1002(21)(A)(i) (fiduciary is one who "exercises discretionary authority or discretionary control respecting management of such plan") and (iii) (fiduciary is one who "has any discretionary authority or discretionary responsibility in the administration of" a plan). A second court has reiterated, in dicta, the principle that an insurer with authority to grant or deny a request to convert is a fiduciary. *Powell v. Bob Downes Chrysler–Plymouth, Inc.*, No. 90–226 C92, 1992 WL 175271, at *5 (E.D.Mo. July 20, 1992). In order to convert from the group plan to an individual plan, plaintiff Gabner had to file an "application," which had to be approved by MetLife before the conversion could occur. After receipt of the application, for example, MetLife first "verified that the amount of coverage applied for was permitted by the Group Life Plan, that the conversion period had not expired, and that the Group Life Plan was still in effect" prior to approving the conversion application. Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Remand, at 5. Because such control over the conversion process by MetLife is consistent with the requirements of the expansive definition, Met Life, the administrator of the group plan, is a fiduciary under ERISA with respect to the conversion of Gabner's policy.

### b. The Individual Defendants Are Not Fiduciaries

The two sales agent defendants are in a different position. The mere marketing of an insurance product is not generally sufficient to create a fiduciary relationship. *American Fed'n of Unions Local 102*, 841 F.2d at 664 (citing *Austin v. General American Life Ins. Co.*, 498 F.Supp. 844, 846 (N.D.Ala.1980); *Cate v. Blue Cross & Blue Shield*, 434 F.Supp. 1187, 1190 (E.D.Tenn. 1977)). Not all "professionals, consultants, advisors, or sales representatives who provide necessary services to ERISA plans" are "transform[ed]" into fiduciaries under § 1002(21)(A) simply because "these persons render advice and play influential roles by virtue of the experience that they possess or the capacities in which they act." *Reich v. Lancaster*, 55 F.3d 1034, 1049 (5th Cir.1995). The Fifth Circuit has suggested that an individual sales agent who makes misrepresentations about the scope of a plan in order to induce a person into participating in that plan does not qualify as a "fiduciary"—such that state law causes of action against that individual are preempted—because that agent's actions do not affect the relations among the principal ERISA entities (employer, plan fiduciaries, the plan, and beneficiaries). *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir.1990). Inasmuch as the

---

**16.** The statutory definition follows:
[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
ERISA § 3, 29 U.S.C. § 1002(21)(A).

individual defendants here were simply agents of MetLife with no significant control over the group health policy and the principal ERISA entities, they cannot be deemed ERISA fiduciaries.

However, MetLife was a fiduciary with respect to the conversion of the policy. The question then remains whether the violation of any fiduciary duty or other ERISA obligation is alleged in the original state court petition sufficient to trigger the applicability of § 502(a)(3). Plaintiff alleges "[d]efendants ... represent[ed] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. The [d]efendants violated the duty of good faith and fair dealing. The [d]efendants also defrauded the [p]laintiffs by alleging they would not have to make any further payments." Plaintiffs' Original Petition, at 5.

▮▮▮▮ Under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), a fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." The duties of a fiduciary include the common-law duty of loyalty, *Varity*, —— U.S. at ——, 116 S.Ct. at 1075 (citing *Central States, Southeast & Southwest Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 570–71, 105 S.Ct. 2833, 2840–41, 86 L.Ed.2d 447 (1985)), which, in turn, requires fair and honest dealings with a beneficiary, *id.* As noted by the *Varity* Court, " 'Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA.' " *Id.* at ——, 116 S.Ct. at 1074 (quoting *Peoria Union Stock Yards Co. v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir.1983)); *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation*, 57 F.3d 1255, 1266–67 (3d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1316, 134 L.Ed.2d 469 (1996) ("The district court's findings that the company actively misinformed its employees by affirmatively representing to them that their medical benefits were guaranteed once they retired, when in fact the company knew this was not true and that employees were making important retire-

ment decisions relying upon this information, clearly supports a claim for breach of fiduciary duty under ERISA."); *Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir. 1988) ("Several courts have ... held that misleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty."); *see also Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1498–501 (10th Cir.1995); *International Brotherhood of Painters & Allied Trades Union & Industry Pension Fund v. Duval*, 925 F.Supp. 815, 821 (D.D.C.1996); *Wilson v. Southwestern Bell Tel. Co.*, 865 F.Supp. 611, 613–14 (E.D.Mo.1994), *aff'd*, 55 F.3d 399 (8th Cir.1995); *Healy v. Axelrod Constr. Co. Defined Benefit Pension Plan & Trust*, 787 F.Supp. 838, 844 (N.D.Ill.1992); *Muenchow v. Parker Pen Co.*, 615 F.Supp. 1405, 1417 (W.D.Wis.1985).

▮▮▮▮ Because Gabner has alleged such deception, the original petition filed in state court, seeking the equitable relief of activation of the policy he thought he purchased or recision, contains claims that must be characterized as falling under § 502(a)(3). The petition was properly removed to this court.

## D. Survey of Cases Determined Not to Arise Under the Civil Enforcement Provisions

To complete the analysis, the court briefly surveys numerous cases decided since *Taylor* that have found various state law claims to be not completely preempted by ERISA's civil enforcement provisions. Only one of these cases is even remotely analogous, and the court's conclusion remains unaltered.

A large percentage of the cases in which removal has been found improper involve medical malpractice claims asserted against medical personnel providing services under an ERISA-governed plan. An often-cited reason for the nonremovability of such claims is that they involve only the *"quality"* of services *previously rendered* under an ERISA plan.[17]

---

17. *See, e.g., Rice*, 65 F.3d at 637 (malpractice claim against plan administrator on theory of

respondeat superior based on disability caused by treatment rendered by plan physician and by

Another group of claims typically not removable consists of claims involving employment discrimination, even when there is some consequential effect by the employment decision on a ERISA-governed plan.[18]

Professional malpractice and employment discrimination claims are not, however, the only types of claims having a consequential effect on ERISA-governed plans that must be remanded to state court for lack of removal jurisdiction. Various types of cases are properly remanded to state court for resolution of the conflict preemption issue.[19]

One such case is *Volkart v. Prudential Insurance Co.*, No. 89 C 6906, 1989 WL 165063 (N.D.Ill. Dec. 21, 1989). Plaintiff brought suit in an Illinois court against Prudential Insurance Company and one of its agents alleging breach of contract, fraud, and violation of a section of the Illinois Insurance Code after his wife gave birth and defendants informed him that most of the maternity expenses would not be covered. Volkart

had been insured previously under group policy which was governed by ERISA; however, prior to the birth of his child he had converted his group policy to an individual policy. He claimed that defendants promised the individual policy would have maternity coverage similar to that under the group policy.

The court first determined whether plaintiff's claims were preempted by ERISA § 514(a), 29 U.S.C. § 1144(a). Noting that plaintiff "takes issue with promises made by defendants regarding a future policy, not conduct undertaken pursuant to the ERISA policy already in place[,]", the court held that the claims had "nothing to do with" administration of the group ERISA plan and were not preempted. *Id.* at *2.

Despite this finding, the *Volkart* court continued its analysis under the assumption that ERISA applied to the converted individual policy.[20] The court discussed the well-plead-

---

a second nonparticipating physician, to whom the employee was referred by the plan physician, not subject to complete preemption); *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350 (3d Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995) (action against HMO arising from medical malpractice allegedly committed by HMO-affiliated hospitals and medical personnel not completely preempted; plaintiffs' claims "merely attack[ed] the quality of the benefits they received"); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269 (2d Cir.1994) (claims for negligent hiring and supervision, professional malpractice, breach of fiduciary duty, and intentional infliction of emotional distress against company that contracted to provide psychotherapy services in connection with an ERISA-governed plan not completely preempted by § 502); *Roessert v. Health Net*, 929 F.Supp. 343 (N.D.Cal.1996) (state law claims of medical negligence and negligent and intentional infliction of emotional distress against HMO and participating physicians were premised on quality of services rendered and were not designed to recover benefits or enforce rights under an ERISA plan; therefore, district court was without removal jurisdiction); *Prihoda v. Shpritz*, 914 F.Supp. 113, 118 (D.Md. 1996) (claim that HMO vicariously liable for malpractice of physicians in its provider network not completely preempted under § 502(a) because claim "is concerned solely with the quality of the benefits provided").

**18.** For example, in *Warner v. Ford Motor Co.*, 46 F.3d 531 (6th Cir.1995), plaintiff's allegation was that he was threatened with discharge because of his age unless he took early retirement. The employee heeded the warning, took early retire-

ment, commenced receiving benefits under an ERISA-governed retirement agreement, and then brought suit in state court alleging discrimination in violation of Michigan law and seeking damages and reinstatement. The Sixth Circuit found the action was improperly removed because it was "an action to set aside and escape from the early retirement agreement, not to recover under it or to 'enforce' it or assert 'rights to future benefits under the terms of the plan.'" *Id.* at 534; *accord Hamburger v. Desoutter, Inc.*, 886 F.Supp. 616 (E.D.Mich.1995); *International Ass'n of Machinists & Aerospace Workers Local Lodge No. 967 v. General Elec. Co.*, 713 F.Supp. 547 (N.D.N.Y.1989); *Hollenbeck v. Burroughs Corp.*, 664 F.Supp. 280 (E.D.Mich.1987).

**19.** *See, e.g., Constantine v. Minis*, 910 F.Supp. 657 (S.D.Ga.1995) (action on behalf of employee stock ownership plan participants alleging state law claims of breach of corporate fiduciary duties, breach of contract, and unjust enrichment against president of defendant corporation in connection with sale of corporation and allegedly improper division of sale proceeds among shareholders remanded, as issues were completely grounded in state law and did not touch upon any of the policy concerns reflected in § 502, despite the fact that the ESOP was an employee benefit plan subject to ERISA).

**20.** As noted above, there exists disagreement among courts whether ERISA applies to an individual policy after it has been converted from a group policy. Because the issue in this case involves alleged actions taken *during* the conver-

ed complaint doctrine and the corollary of complete preemption under ERISA § 502(a). The court concluded:

> Volkart's lawsuit could not have been brought pursuant to Section 1132. He seeks neither to recover benefits under the terms of his (ERISA) plan, to enforce his rights under the plan, to clarify his future rights under the plan, or to redress violations committed under the plan. His is not a "cause of action brought under the guise of a state law claim charging improper denial of benefits under an employee benefits plan covered by ERISA," the kind of claim that is "preempted and displaced by ERISA." *Armbruster v. Benefit Trust Life Ins. Co.,* 687 F.Supp. 403, 405 (N.D.Ill. 1988). Rather, Volkart charges defendants with making false representations about his incipient individual plan

*Volkart,* 1989 WL 165063, at *4.

The case at hand at first blush appears analogous. As in *Volkart,* the claims in this case are premised on (1) misrepresentations (2) by an insurance company and its agents (3) that prompted an employee to exercise his right to convert from group insurance coverage to an individual policy. But there is one principal difference: the alleged misrepresentations in *Volkart* related to the scope of coverage (and included a claim that benefits were wrongfully denied as being beyond the scope of that coverage). Here, the alleged misrepresentations involved purchase price, not a claim for benefits.

The ultimate conclusion in *Volkart* was reached with little analysis of § 502(a)'s provisions. Moreover, the decision has never been cited in a reported case for the above-extracted proposition. In any event, assuming ERISA applies, it follows from the discussion in section IV.C.1., *supra,* that Volkart's claims should, at bottom, be described as seeking the pay out of benefits allegedly due under a policy, and are readily categorized under the § 502(a)(1)(B) heading. None of the language in *Volkart* has any application to § 502(a)(3), the key provision at issue.

In summary, preemption case law does not alter the conclusion that this case was properly removed.

## V. Conclusion

Because Gabner's claim against MetLife falls within the scope of ERISA § 502(a)(3), plaintiff's motion to remand is denied. An order will be entered separately.

---

sion process, the court expresses no opinion as to post-conversion applicability of ERISA or the appropriateness of the *Volkart* court's assumption.