United States Court of Appeals,

Fifth Circuit.

No. 92-2577.

William R. PERDUE, Plaintiff-Appellant,

v.

BURGER KING CORPORATION, Craig Bushey, and The Benefits Committee, Defendants-Appellees.

Dec. 1, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before JONES and DeMOSS, Circuit Judges, and BARBOUR[1], District Judge.

DeMOSS, Circuit Judge:

## I. BACKGROUND

Burger King Corporation ("BKC") is the owner, operator and franchisor of Burger King fast food restaurants. In March of 1981, William R. Perdue ("Perdue") went to work for BKC as a restaurant manager. In 1987, Perdue was promoted to Franchise Area Manager ("FAM") for the Houston office, a position in charge of all Houston-based Franchise District Managers. In April of 1989, BKC instituted an internal reorganization to eliminate several management tiers.

To ease the impact of the reorganization on its employees, BKC created the Burger King Job Elimination Program ("Program"). The Program provides that for a period of three years from the date of implementation, any full-time employee who loses his job as a result of a job elimination plan or reduction in workforce is entitled to receive certain severance benefits.

BKC's reorganization eliminated the FAM position from all BKC regions. On April 3, 1989, Perdue was approached by Craig Bushey ("Bushey"), the operations vice-president for the Houston area, and Wes Garnett ("Garnett"), the human resources manager for that area. Bushey and Garnett explained that the FAM position had been eliminated and that Perdue could either continue with BKC as Franchise Operations Manager ("FOM") for the Houston area, or receive cash severance benefits

[1]Chief District Judge of the Southern District of Mississippi, sitting by designation.

under the Program. Perdue immediately accepted the position as FOM, and performed that job until July 31, 1989 when he was terminated by BKC.

In mid-July, 1989, Bushey received a telephone call from Rita Battistoni ("Battistoni"), an employee in the BKC accounting department in Los Angeles, California. Battistoni requested that Bushey submit in writing his approval of an extension of time for Perdue to repay a travel advance in the amount of $1,000 ("travel advance" or "advance"), outstanding since May of 1988. During this conversation, Battistoni relayed that she had been informed by Perdue that Bushey had agreed to extend repayment of the travel advance until September of 1989. Bushey denied that he had ever approved an extension or even known of the advance.

On July 31, 1989, Bushey and Garnett met with Perdue to discuss the advance. Perdue claimed he told Battistoni that he *could* obtain approval for an extension of the advance, not that he had already obtained approval. Bushey terminated Perdue's employment with BKC because Bushey felt that Perdue was no longer trustworthy.

Upon termination, Perdue demanded payment of severance benefits under the Program. The Burger King Corporation Benefits Committee ("Benefits Committee" or "Committee") determined that Perdue was ineligible to receive benefits under the Program because Perdue's termination did not result from either a reduction in workforce or a job elimination plan.[2] Thus, BKC denied payment.

Perdue filed suit against BKC, the Committee and Bushey on September 28, 1989, seeking, among other things, payment of severance benefits. He brought four claims under the Employee Retirement Income Security Act of 1974[3] (ERISA): (1) a section 1132(a)(1)(B) claim for benefits allegedly due him under the Program; (2) a section 1132(a)(3) claim for violation of ERISA disclosure duties; (3) a breach of fiduciary duty claim under sections 1104, 1105 and 1109; and (4) a claim for interference with ERISA benefits under section 1140. Perdue also asserted claims of common law fraud and breach of an agreement to offer him a franchise.

---

[2]Neither Bushey nor Garnett was a member of the Committee at the time the Committee denied Perdue's eligibility to receive severance benefits under the Program.

[3]29 U.S.C. § 1001, et seq. (1985 & Supp.1993).

The defendants removed this cause to federal court on the ground that ERISA preempted the state law claims. The district court granted BKC's summary judgment motion on each and every one of Perdue's claims. On appeal, Perdue requests review of summary judgment on the section 1132(a)(1)(B) claim, the section 1140 claim, and the common law fraud and breach of contract claims.

## II. DISCUSSION

We concur in the district court's determination that the BKC Program is a limited benefits plan within the meaning of section 1002(1) of ERISA.[4] Therefore, subject matter jurisdiction to review appellant's ERISA and pendant state claims is proper.[5]

A. Standard of Review for Denial of Eligibility Under an ERISA Plan

A denial of benefits under an ERISA plan is reviewed either *de novo* or, where the plan delegates discretionary authority to an administrator or fiduciary to determine eligibility for benefits or to interpret the terms of the plan, for an abuse of discretion. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Perdue contends that the district court committed reversible error in reviewing the Committee's denial of benefits under "summary judgment standards," instead of under either of the two ERISA standards.

The parties agree that the district court should have reviewed the Committee's determination

---

[4]29 U.S.C. § 1002(1) (1985 & Supp.1993).

[5]In his motion filed June 12, 1992, Perdue suggests that federal subject matter jurisdiction "may not be" proper by characterizing the BKC Program as a non-ERISA plan, analogous to the non-ERISA plans in *Fontenot v. NL Indus., Inc.,* 953 F.2d 960 (5th Cir.1992) and *Wells v. General Motors Corp.,* 881 F.2d 166 (5th Cir.1989), *cert. denied, General Motors Corp. v. Wells,* 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990). We disagree.

In *Whittemore v. Schlumberger Technology Corp.,* 976 F.2d 922, 923 (5th Cir.1992), this court distinguished the plans at issue in *Fontenot* and *Wells,* finding the Schlumberger plan to be an ERISA "employee welfare benefit plan" because it was not created with a preconceived closing date, was effective for an extended period of time, and required "some sort of an administrative set-up" to facilitate employee payments. *Id.*

The BKC Program was in effect for three years, applied to two nation-wide personnel reorganizations, and required an "administrative set-up" to monitor and facilitate provision of benefits. For these reasons, the BKC Program is an ERISA "employee welfare benefit plan."

for an abuse of discretion. Although this standard was not applied, the district court's *de novo* review accorded the Committee's determination no deference and thus, could not possibly have harmed Perdue. The district court's error is harmless and not a ground for reversal.

B. Perdue's Appeal of ERISA Section 1132(a)(1)(B) Claim

Section 1132(a)(1)(B) of ERISA provides a private right of action for persons alleging entitlement to benefits, or seeking to enforce or clarify rights, pursuant to the terms of an ERISA plan.[6] Perdue's section 1132(a)(1)(B) claim alleges that the Committee abused its discretion in denying him eligibility to receive severance benefits under the Program. On appeal, he argues that material fact issues were raised before the district court.

The district court held that Perdue is precluded from bringing a section 1132(a)(1)(B) claim for benefits because his termination did not result from either a workforce reduction or a job elimination plan. We agree. The plain language of the BKC Program limits eligibility to employees involuntarily terminated in connection with either a workforce reduction or job elimination plan.[7] Because Perdue does not allege that his termination as FOM occurred under either of these two circumstances, he fails to allege entitlement to benefits within the eligibility provision of the Program.[8]

---

[6]29 U.S.C. § 1132 provides, in relevant part, that "[a] civil action may be brought—(1) by a participant ... (B) to recover benefits due to him under the terms of the plan, [or] to enforce his rights under the terms of the plan...." 29 U.S.C. § 1132(a) (1985 & Supp.1993). "Participant" is defined by section 1002(7) as "any employee or former employee ... who is eligible ... to receive a benefit of any type from an employee benefit plan which covers [such] employee[ ]." 29 U.S.C. § 1002(7) (1985 & Supp. I 1993).

[7]The BKC Program provides as follows:

> This program applies to employees of the Company who work for Burger King Corporation or its subsidiary.... In addition, to be eligible for the program these employees must be regular full-time or part-time employees who are involuntarily terminated by the Company because of a workplace reduction or job elimination who continue to work until their services are in the opinion of the Company no longer required, and who sign a General Release.... This Program is not available: (a) to employees whose employment is terminated for just cause or for reasons unrelated to workforce reductions or job elimination....

[8]Perdue's claim that the Committee abused it discretion is based on allegations that BKC and/or the Committee failed to act in good faith, concealed the specific terms of the Program, and inconsistently applied the Program's eligibility provision. These assertions are more appropriately raised in connection with Perdue's section 1140 claim that BKC and/or the Committee wrongfully

A BKC employee terminated for cause, or for reasons unrelated to a workforce reduction or job elimination, is expressly ineligible to receive benefits under the Program, and, therefore, does not have a claim for benefits under section 1132(a)(1)(B) of ERISA. The summary judgment evidence establishes that Perdue's employment was terminated for cause, specifically because Bushey no longer considered Perdue trustworthy following the travel advance incident.[9] Thus, summary judgment on Perdue's section 1132(a)(1)(B) claim is proper.

## C. Perdue's Appeal of Claim Under ERISA Section 1140

Section 1140, in applicable part, makes it "unlawful for any person to discharge, ... expel, or discriminate against a participant ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...."[10] Perdue claims that Bushey induced his acceptance of the FOM position and subsequently terminated his employment under the pretext of cause, so that BKC could avoid payment of severance benefits. He appeals the district court's failure to consider "suspect" circumstances surrounding his termination.[11]

Section 1140 is concerned with acts taken against employees to prevent rights from ripening.

---

interfered with his attainment of rights under the Program.

[9] A claimant under section 1132(a)(1)(B) has the initial burden of demonstrating entitlement to benefits under an ERISA plan, or that a denial of benefits under an ERISA plan is arbitrary and capricious. *See Taylor v. Suburban Teamsters of Northern Illinois Fringe Ben. Funds,* 613 F.Supp. 205, 209 (N.D.Ill.1985); *Carr v. Trustees of Hotel & Restaurant Employees and Bartenders Int'l Union Pension Fund,* 585 F.Supp. 949, 950 (E.D.Pa.1984).

> As the nonmovant, Perdue is required to demonstrate a genuine issue of material fact on all matters for which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Perdue failed to tender summary judgment evidence which would show that his termination was for reasons other than those alleged by the defendants.

[10] 29 U.S.C. § 1140 (1985 & Supp.1993). This section also makes it unlawful for an employer to retaliate against an employee for exercising rights under an ERISA plan, and to retaliate against any person for giving information relating to an ERISA plan. Perdue does not allege that retaliatory acts were taken against him as a result of his exercise of Program rights or because he provided information relevant to the Program.

[11] The specific allegations raised by Perdue include the following: 1) that Bushey and Garnett coaxed him to remain with BKC and accept the FOM position instead of exercising his right to receive severance benefits; 2) that Bushey and Garnett were looking for an "excuse" to fire Perdue since the time Perdue decided to remain with BKC; and 3) that the misunderstanding surrounding the travel advance provided a pretext for terminating Perdue's employment.

The prohibitions under the statute do not extend *per se* to an employer who retains an employee so as to avoid payment of severance benefits under an ERISA plan.[12]  *See Garavuso v. Shoe Corp. of America Industries, Inc.,* 709 F.Supp. 1423 (S.D.Ohio 1989), *aff'd* 892 F.2d 79 (6th Cir.1989). Instead, a section 1140 claimant is required to demonstrate that the employer discharged the claimant "with the specific intent of interfering with ... ERISA benefits."  *Simmons v. Willcox,* 911 F.2d 1077, 1081-82 (5th Cir.1990), *citing Clark v. Resistoflex Co.,* 854 F.2d 762, 770 (5th Cir.1988) (speculative allegations that an employer had something to gain by terminating an employee are insufficient to create a genuine issue of material fact).  Perdue has failed to point to specific facts which indicate that Bushey induced Perdue's acceptance of the FOM position, or terminated Perdue's employment, with the specific intent of interfering with Perdue's attainment of rights under the Program.

Furthermore, at the time of Perdue's discharge, Perdue did not have rights under the Program with which the defendants could interfere.  Upon acceptance of the FOM position, Perdue's right to severance benefits under the Program ceased to exist.  Thereafter, any Program rights which Perdue might have would arise only if BKC were to institute either a workforce reduction or a job elimination plan involving the FOM position.  Thus, Bushey and BKC did not interfere with Perdue's rights within the meaning of ERISA section 1140.  Summary judgment on this claim is proper.

D. Perdue's Appeal of State Law Claims

### 1. Common Law Fraud

Perdue appeals the district court's ruling that his common law fraud and breach of contract claims are preempted by ERISA, or, alternatively, are void as within the statute of frauds.  The district court correctly decided that ERISA preempts Perdue's common law fraud claim because the only damages recoverable under the claim "relate to" the value of the severance benefits waived by Perdue upon acceptance of the FOM position.  *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62-63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (ERISA preempts common law claims that

---

[12]The parties concur that on April 3, 1989, BKC informed Perdue that he could either receive severance benefits under the Program or accept the FOM position.  Perdue chose to accept the position as FOM and to forego his right to receive benefits.

"relate to" the recovery of benefits under an ERISA plan.).[13]

## 2. Breach of Oral Agreement to Offer a Franchise

The district court incorrectly determined that ERISA preempts Perdue's claim for breach of an agreement to confer a franchise because this common law claim does not "relate to" the BKC Program. Nevertheless, summary judgment on this claim is proper as the statute of frauds bars enforcement of the alleged promise.[14]

## III. CONCLUSION

Thus, we hold that the district court's grant of summary judgment is AFFIRMED.

---

[13]ERISA preempts those laws that "relate to" employee benefit plans. 29 U.S.C. § 1144(a) (1985 & Supp.1993). A law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2899-2900, 77 L.Ed.2d 490 (1983).

Perdue attempts to avoid ERISA preemption of his fraud claim by pleading damages for the value of his future employment with BKC, a claim not "related to" the Program. Texas courts do not recognize a common law fraud claim for the lost value of future employment based on an oral employment agreement. *Webber v. M.W. Kellogg Co.,* 720 S.W.2d 124, 129 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (An oral employment agreement is barred by the statute of frauds, even where artfully framed as a claim for fraud.).

[14]The oral promise to confer a franchise after ten years employment with BKC could not be performed within one year of its making, and is therefore within the statute of frauds and unenforceable as a matter of law. TEX.BUS. & COMM.CODE ANN. § 26.01 (Vernon 1987 & Supp.1993); *Wiley v. Bertelsen,* 770 S.W.2d 878 (Tex.App.—Texarkana 1989, no writ).

Perdue contends the statute of frauds does not bar enforcement of the oral agreement because the agreement was subsequently memorialized in an August 4, 1983 memorandum. The memorandum states in its entirety: "Based on commitments [sic] made during Randy's interview process with Burger King Corporation, I am making the following adjustments: Randy's anniversary date for *service pin awards* will be July 19, 1976. Randy is given 507 credit, (28 months) for his 56 months of franchise service towards the 10 year franchising requirement." Contrary to Perdue's contention, the memorandum does not satisfy the statute of frauds because it is not "complete within itself in every material detail, ... so that the contract can be ascertained from the writing without resorting to oral testimony." *Cohen v. McCutchin,* 565 S.W.2d 230, 232 (Tex.1978).