Terry E. HARTMAN and Jon G. Thorne, Plaintiffs,

v.

TEXACO, INC., Defendant.

No. Civ.A. H–99–2757.

United States District Court, S.D. Texas, Houston Division.

Oct. 6, 2000.

Marcus Eugene Faubion, Jr., Houston, TX, for Terry E. Hartman, plaintiff.

Steven W. Sloan, Thompson & Knight, Dallas, TX, Michael G. McQueeney, Texaco Inc, Legal Dept., Houston, TX, David M. Pryor, BNSF, Law Dept, Ft. Worth, TX, for Texaco Inc., defendant.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

Plaintiffs Terry Hartman and Jon Thorne, former employees of Texaco, Inc. ("Texaco"), claim they were wrongfully denied severance benefits promised to them in the wake of a corporate reorganization. Defendant Texaco responds that Plaintiffs voluntarily retired and therefore do not qualify for benefits; in addition, Defendant contends that Plaintiffs' claims are preempted and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). All parties have filed motions for summary judgment. *See* Defendant's Motion for Summary Judgment [Doc. # 21]; Plaintiffs' Motion for Summary Judgment [Doc. # 23]. Having considered the parties' motions, responses, all matters of record, and the applicable authorities, the Court concludes that Defendant's Motion for Summary Judgment should be **granted,** and Plaintiffs' Motion for Summary Judgment should be **denied.**

## I. BACKGROUND FACTS

In the late 1990s, Texaco and Shell Oil Co., Inc. entered into a joint venture called Equilon Enterprises, L.L.C. (the "Alliance"). The purpose of the Alliance was to merge certain "downstream" operations, thus streamlining both corporations. Anticipating resulting reductions in force, Texaco amended its pre-existing Separation Pay Plan (the "Plan"), which provided for severance benefits to laid-off employees, to expand benefit eligibility requirements.

The Plan amendments, entitled the Special Involuntary Separation Program ("SISP"), were first announced by Janet L. Stoner, Texaco's Vice President of Human Resources ("Stoner"), to the heads of Texaco's business units, departments and subsidiaries in a letter dated April 20, 1998. *See* Deposition of Janet Stoner (Ex. C to Defendant's Motion) ("Stoner Deposition"), at Ex. 1 ("Stoner Letter"). The SISP provided eligible, approved employees with severance pay of up to two weeks' pay per year of employment with a maximum of fifty-two weeks' pay. The SISP also provided certain benefits to eligible employees who were of retirement age. Eligible employees were defined as those involuntarily separated from employment, on the grounds that (1) they were deemed "not best suited to meet the needs of the organization going forward"; (2) their positions had been eliminated or downgraded by two pay grades in an ongoing corporate restructuring; or (3) they had been offered a replacement job, but the replacement job would require relocation, be outside the employee's current job family, or pay less than the employee's current job. *See* Special Involuntary Separation Program Administrative Guidelines (Ex. 2 to Stoner Dep.) ("SISP Guidelines"), at unnumbered second page. All requests for SISP benefits had to be submitted and approved by the Separation Review Committee (the "Committee"). *Id.* at unnumbered third page. The summary description of the Plan also provided that the "Plan Administrator is responsible for the administration of this plan and has final discretionary authority to interpret the plan's provisions." *See* Separation Pay Plan Summary Plan Description and Formal Plan Text (Ex. 1.A to Defendant's Response to Plaintiff's Motion to Remand [Doc. # 9] ) ("Plan Description"), at 10. Stoner was the Plan Administrator and thus retained discre-

tionary authority over administration of SISP.

At the time SISP was announced in 1998, Plaintiffs Terry Hartman ("Hartman") and Jon Thorne ("Thorne") were employed at Texaco's Galena Park lubricants plant. Hartman, then fifty-four years old, was a manager in the freight billing department and had worked at Texaco for approximately twenty-seven years. Thorne, then sixty-two years old, was an administrative assistant and had worked at Texaco for approximately thirty-seven years. Hartman and Thorne became aware of SISP not long after Stoner's letter was circulated. Both approached the Galena Park plant manager, then Richard Hudson, to inquire about retirement benefits under SISP. Hudson forwarded the inquiries to Helen Powell, the human resources manager in charge of the Galena Park lubricants plant. *See* E-mail from Richard A. Hudson to Teann Otwell and Celine M. Stewart, 5/28/98 (Ex. 2 to Hartman Dep.). Powell forwarded Hartman and Thorne's requests for SISP retirement benefits to Peter David Sherwin, Secretary of the Committee. *See* Letter from Helen Powell to Dave Sherwin, 6/04/98 (Ex. 8 to Stoner Dep.). On June 17, 1998, Ron Bouilla, a member of the Committee, responded to Powell that Hartman and Thorne were approved for SISP benefits. *See* Letter from R.G. Boilla to H.M. Powell, 6/17/98 (Ex. 9 to Stoner Dep.).

However, Powell did not communicate to Hartman or Thorne that they had been approved by the Committee.[1] *See* Deposition of Randal Ray (Attach. to Plaintiff's Motion) ("Ray Deposition"), at 22.

In the fall of 1998, both Hartman and Thorne were notified that they had been disapproved for SISP benefits. In November of 1998, Hartman and Thorne both met with Morris Kohnke, the new Galena Park lubricants plant manager, Randal Ray, the new human resources manager for the Alliance in the Houston area, and Ronnie Boneau, a Texaco human resources manager. The purpose of the meetings was to explain to both men why they had been disapproved for benefits. At the meetings, both men were told that they would have a job.[2] Until the November meetings, neither Hartman nor Thorne had been informed as to what their future employment situation with the Alliance would be.[3] In an e-mail dated December 30, 1998, Powell confirmed to Sherwin that Hartman and Thorne were not leaving Texaco Lubricants Company because "[their] jobs remained in an asset based plant & relocation was required [sic] not required." E-mail from H.M. Powell to P.D. Sherwin, 12/30/98 (Ex. 8 to Powell Dep.).

In the months following the meetings, Hartman and Thorne made several inquiries to various personnel in Texaco's human resources department regarding the status of their request for SISP benefits.

1. Powell clarifies that the letter merely granted "pre-approval": "[Hartman and Thorne's] names came up as possibilities, and it was not at all uncommon for me to get pre-approval so that if they were approved, and if management then deemed it yes they can go, they could do it." Deposition of Helen Powell (Ex. E to Defendant's Motion) ("Powell Deposition"), at 17.

2. The substance of the conversation is somewhat disputed. Ray and Boneau both testify that it was clear to them that the men were being offered continued employment in the same position. Ray Dep., at 33; Deposition of R. Boneau (Attach. to Plaintiffs' Motion), at 14–15. *See also* Powell Dep., at 24 (stating that new lubricants plant manager said "he could not possibly eliminate any positions at all"). Hartman and Thorne claim that they were given no specifics about the jobs offered and did not believe that they were being offered continued employment in their current positions.

3. From April 1998 forward, both men had expressed an interest in retiring, in part motivated by the fear that their positions would not survive the corporate reorganization. In fact, Hudson had told Thorne his job was being eliminated. *See* E-mail from Tony H. Sanchez to Elisabeth L. Young and Cynthia L. Esthay, 5/06/98 (Ex. 1 to Thorne Dep.).

In February and March of 1999, Hartman and Thorne wrote several letters to Stoner inquiring into and appealing their denial of SISP benefits. *See* Letter from Terry E. Hartman, Darrell A. Jones, and Jon G. Thorne to Janet L. Stoner, 2/02/99 (Ex. 10 to Stoner Dep.); Facsimile from Hartman, Jones, and Thorne to Janet L. Stoner, 2/19/99 (Ex. 11 to Stoner Dep.); Letter from Hartman and Thorne to Janet L. Stoner, 3/02/99 (Ex. 12 to Stoner Dep.). In a letter dated March 16, 1999, Stoner replied that she had reviewed Hartman and Thorne's situations and affirmed the denial of SISP benefits on the grounds that Hartman and Thorne's "positions were not being eliminated, and that [they] would have continuing employment at the Galena Park Plant." Letter from Janet L. Stoner to T.E. Hartman, D.A. Jones, and J.G. Thorne, 3/16/99 (Ex. 13 to Stoner Dep.). Nevertheless, both men elected to retire from Texaco on March 31, 1999.

In July of 1999, having retired but having received no severance pay under SISP, Plaintiffs filed suit in the district court of Harris County, Texas, alleging breach of contract, breach of implied contract and promissory estoppel. *See* Plaintiffs' Original Petition (Ex. 1 to Notice of Removal [Doc. # 1]). Defendants removed to this Court on the basis of diversity and federal question jurisdiction, asserting that Plaintiffs' claims were preempted by ERISA. *See* Notice of Removal. Plaintiffs filed a Motion for Remand. *See* Motion for Remand [Doc. # 8]. This Court denied Plaintiffs' motion, finding diversity jurisdiction and holding that Defendant had raised a substantial issue that ERISA governed Plaintiffs' claims. Memorandum and Order [Doc. # 11], at 6, 12. On August 15, 2000, Plaintiffs and Defendant each filed a motion for summary judgment on all claims.

## II. *SUMMARY JUDGMENT STANDARD*

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *Boze v. Branstetter*, 912 F.2d 801, 804 (5th Cir.1990). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The facts are to be reviewed with all "justifiable inferences" drawn in favor of the party opposing the motion. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998) (citing *Anderson*, 477 U.S., at 255, 106 S.Ct. 2505). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir.1996).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith*, 158 F.3d at 911. The burden then shifts to the nonmovant to demonstrate that summary judgment is inappropriate. *See Morris*, 144 F.3d at 380. This is accomplished by producing "significant probative evidence" that there is an issue of material fact so as to warrant a trial, *see Texas Manufactured Hous. Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir.1996), *cert. denied*, 521 U.S. 1112, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 161 (5th

Cir.1996); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994), and that is "sufficient to support a jury verdict." *Morris*, 144 F.3d at 380; *accord Doe v. Dallas Indep. School Dist.*, 153 F.3d 211, 215 (5th Cir.1998). This burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See, e.g., Morris*, 144 F.3d at 380. Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *See id.* Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* Dispute about a material fact is genuine only if evidence is such that a reasonable jury could return a verdict for nonmoving party. *See Stafford v. True Temper Sports*, 123 F.3d 291, 294 (5th Cir.1997); *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir.1992).

In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.1995); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*), 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *See Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

## IV. *DISCUSSION*

Defendant seeks summary judgment on the grounds that the Plan, as amended by SISP, is an ERISA plan, and that as such, Plaintiffs' contract and promissory estoppel claims for payment of SISP benefits are preempted by ERISA. Plaintiffs move for summary judgment on their state law claims; they do not plead a claim under ERISA.[4] The Court agrees with Defendant. Because the Plan is an ERISA plan, ERISA completely preempts Plaintiffs' state law claims. Plaintiffs have failed to plead a claim under ERISA, and therefore their motion for summary judgment is denied as moot.[5]

### A. Plaintiff's Claims are Preempted by ERISA

■ Under the complete preemption doctrine, Congress may so completely preempt a particular field that any complaint raising claims in that field is necessarily governed by federal law. *See Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475–76, 118 S.Ct. 921, 139 L.Ed.2d 912

4. In its answer to Plantiffs' Original Petition, Defendant contends that any ERISA claim would be barred, as Plaintiffs have not exhausted their remedies under the Plan, and because the actions on which Plaintiffs' claims are based occurred outside the applicable statute of limitations period. Defendant's Original Answer (Ex. 3 to Notice of Removal), at ¶¶ IV, V. Even if Plaintiffs had pleaded an ERISA claim, and it were deemed not barred, such a claim would most likely fail. Texaco's Plan, as amended by SISP, provided that the Plan Administrator "has final discretionary authority to interpret the plan's provisions" and that "decisions of the Plan Administrator with respect to all issues and questions will be final, conclusive, and binding on all persons." Plan Description, at

10. This Court would review the Administrator's decision to deny benefits under an abuse of discretion standard. *Weir v. Federal Asset Disposition Ass'n*, 123 F.3d 281, 285 (5th Cir. 1997); *Haubold v. Intermedics, Inc.*, 11 F.3d 1333, 1336–37 (5th Cir.1994). The record before the Court does not indicate that Defendant acted arbitrarily or capriciously in denying SISP benefits to Plaintiffs. Under the terms of SISP, Plaintiffs did not qualify for benefits because they had not been denied appropriate employment.

5. Defendant's Motion to Strike Jury Demand [Doc. # 20] is therefore granted, for the reasons cited therein.

(1998); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). ERISA preempts "any and all State laws insofar as they now or hereafter relate to an employee benefit plan." 29 U.S.C. § 1144(a). In cases in which state law claims are related to an employee benefit plan, courts have held that such claims are completely preempted by ERISA. *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 43, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Cypress Fairbanks Medical Center, Inc. v. Pan–American Life Insurance Co.,* 110 F.3d 280 (5th Cir.), *cert. denied,* 522 U.S. 862, 118 S.Ct. 167, 139 L.Ed.2d 110 (1997); *Hogan v. Kraft Foods,* 969 F.2d 142, 144–45 (5th Cir.1992). ERISA preempts not only state laws specifically designed to affect ERISA-governed employee benefit plans, but also laws of general application which, when applied in particular settings, can be said to have a connection with or a reference to an ERISA plan. *See Nickel v. Estate of Estes,* 122 F.3d 294, 297 (5th Cir.1997); *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321, 1328–29 (5th Cir.1992). The connection may be indirect and may exist even if the state law is not designed to affect the plan. *See Rozzell v. Security Services, Inc.,* 38 F.3d 819, 821 (5th Cir. 1994). *But see Corporate Health Ins., Inc. v. Texas Dept. of Ins.,* 215 F.3d 526, 535 (5th Cir.2000) (holding that "[a] law does not 'refer to' ERISA plans if it applies neutrally to ERISA plans and other types of plans") (citations omitted), *reh'g denied,* 220 F.3d 641 (5th Cir.2000).

▪ Claims in which the plaintiff primarily seeks payment under the terms of employee benefit plans are governed by

ERISA. *Taylor,* 481 U.S. at 62–63, 107 S.Ct. 1542; *Epps v. NCNB Texas,* 7 F.3d 44, 45 (5th Cir.1993) ("When a court must refer to an ERISA plan to determine the plaintiff's retirement benefits and compute the damages claimed, the claim relates to an ERISA plan") (citations omitted).[6] Plaintiffs' claims for severance benefits arise only from the terms of SISP. If Texaco's SISP is deemed an employee benefit plan, Plaintiffs' claims are preempted and governed by ERISA.

▪ The Supreme Court defined the characteristics of an ERISA plan in *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). In that case, a Maine law required employers to make one-time severance payments to employees in the event of a plant closing. An employer challenged the Maine law, claiming that it was preempted by ERISA. The Court clarified that ERISA only preempted state laws regulating employee benefit *plans. Id.* at 7–8, 107 S.Ct. 2211. In determining what constituted a "plan," the Court looked to the purpose of ERISA preemption—to protect employers from the possibly conflicting demands of various state laws regulating employee benefit plans. *Id.* at 9, 107 S.Ct. 2211. The Court found that ERISA preempted only state laws seeking to regulate "benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." *Id.* at 11, 107 S.Ct. 2211. The Supreme Court suggested several factors which would indicate an employer's ongoing administration and thus the existence of an ERISA plan: "determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appro-

**6.** Not every lawsuit in which reference to benefit plans is necessary to compute plaintiff's damages is preempted by ERISA. *Compare Rozzell,* 38 F.3d at 821 (finding state law claim was not preempted on the grounds that it "relates to" an employee benefit plan when plaintiff asserted expressly only a claim for retaliatory discharge under Texas Workers'

Compensation Act and the single connection to the benefits plan argued by defendant was that the computation part of the damages necessitated reference to the ERISA plan); *Burks v. Amerada Hess Corp.,* 8 F.3d 301, 306 (5th Cir.1993) (holding that a "claim that unlawful termination resulted in loss of benefits is not preempted by ERISA").

priate records in order to comply with applicable reporting requirements." *Id.* at 9, 107 S.Ct. 2211. Under these criteria, the Court held that the Maine law did not constitute an employee benefit plan:

> The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control.... The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.

*Id.* at 12, 107 S.Ct. 2211.

The Court further relied on the regulatory purpose behind ERISA: to prevent abuses by company personnel administrating employee benefit plans. *Id.* at 15, 107 S.Ct. 2211. The Court noted, "The focus of the statute is thus on the administrative integrity of benefit plans—which presumes that some type of administrative activity is taking place." *Id.* The Court held that the Maine law required no such activity: "[N]o further information regarding the terms of the severance pay obligation is needed because the statute itself makes these terms clear." *Id.* at 16, 107 S.Ct. 2211. The Court implied that because the Maine law was so clearly defined as to be almost self-executing, there was no need for discretion in its administration, no opportunity for fraud, and thus no need for ERISA's fiduciary safeguards.

The Fifth Circuit has applied the *Fort Halifax* criteria in four cases involving severance pay plans. *See Wells v. General Motors Corp.*, 881 F.2d 166 (5th Cir.1989); *Fontenot v. NL Industries, Inc.*, 953 F.2d 960 (5th Cir.1992); *Whittemore v. Schlumberger Technology Corp.*, 976 F.2d 922 (5th Cir.1992); *Perdue v. Burger King Corp.*, 7 F.3d 1251 (5th Cir.1993). Following *Fort Halifax*, Fifth Circuit authority establishes that in order to qualify as an ERISA plan, a severance pay plan must possess indicia of continuing administration by the employer. In *Wells* and *Fontenot*, the court found that the severance programs at issue were not ERISA plans. Both programs involved one-time, lump sum payouts to a specified group of individuals.[7] In *Wells*, the severance payout was the result of negotiations between union and management at a particular plant that was closing. *Wells*, 881 F.2d at 168. In *Fontenot*, the severance pay was a "golden parachute" arranged for a limited number of high-ranking executives. *Fontenot*, 953 F.2d at 961. In *Perdue* and *Whittemore*, the courts found that the severance plans did involve ongoing administration. In *Perdue*, the plan involved an internal reorganization within Burger King Corporation involving the elimination of several tiers of management over three years. The court emphasized that the lay-offs were the result of "nation-wide personnel reorganizations" which required an " 'administrative set-up' to monitor and facilitate provision of benefits." *Perdue*, 7 F.3d at 1253 n. 5 (citing *Whittemore*, 976 F.2d at 923). In *Whittemore*, the court simply noted that the employer's plan required ongoing administration. *Whittemore*, 976 F.2d at 923.[8]

---

7. The Fifth Circuit specifically held that an employee's option to receive severance payments in installments as opposed to one lump sum would not be sufficient to show ongoing administration by the employer. *Wells*, 881 F.2d. at 176.

8. Distinguishing the employer's plan in *Whittemore* from the Maine law in *Fort Halifax*, the Fifth Circuit remarked that the "[employer's] plan, on the other hand, was not created with a particular closing in mind and had been in existence for some time." *Whittemore*, 976 F.2d at 923. In light of the Circuit's subsequent holding in *Perdue*, this remark cannot be taken to be a concrete criterion distinguishing ERISA plans from non-ERISA plans. In *Perdue*, the severance plan had a targeted "closing"—the elimination of particular management tiers—and had a specified duration of three years. The court most likely intended simply to highlight the

This Court finds that the severance program at issue, Texaco's SISP, constitutes an ERISA plan. Texaco's SISP requires the employer to undertake all the obligations enumerated in *Fort Halifax*. The types of benefits offered, the discretion necessary to determine which employees were eligible, the determination of amounts of severance due, and the institution of an administrative mechanism for approval and denial of claims show that the SISP required ongoing administration.

The SISP was initiated specifically to deal with lay-offs resulting from creation of the Alliance, *i.e.*, mergers and eliminations of certain divisions of Shell Oil Company, Inc. and Texaco. Significant reductions in force were expected and occurred, requiring over $184,000,000 in benefits to be paid out under the SISP. Declaration of Peter David Sherwin (Ex. D to Defendant's Motion) ("Sherwin Declaration"), ¶ 11, at 3. The election of benefits under SISP was available to employees during a fourteen month period between May 1, 1998 and July 1, 1999. The SISP was an amendment to Texaco's general Separation Pay Plan, which had been in existence since 1991 and continues today. Sherwin Decl., ¶ 4, at 1.

Moreover, in addition to severance pay, the SISP provided for benefits which necessitated ongoing administration. For eligible employees of early retirement age, the SISP provided life insurance coverage and ongoing health insurance under the company's medical plan. Other eligible employees were provided with six months of coverage under the company's medical plan. The SISP also offered outplacement benefits, up to six months of job search and career transition services. *See* SISP Guidelines.

The SISP mandated administrative discretion to determine employee eligibility for the program. Benefits under the SISP were available only to employees who were "involuntarily separated." "Involuntary separation" occurred when (1) employees were deemed "not best suited to meet the needs of the organization going forward"; (2) their positions had been eliminated or downgraded by two pay grades in an ongoing corporate restructuring; or (3) they had been offered a replacement job, but the replacement job would require relocation, be outside the employee's current job family, or pay less than the employee's current job. *See* SISP Guidelines, at unnumbered second page. These determinations required discretion on the part of the decision-maker.[9] Unlike the Maine law in *Fort Halifax*, the SISP terms were neither self-explanatory nor self-executing.

Moreover, payouts pursuant to the SISP were (and are) monitored by the Committee. The Committee must approve severance benefits. *See* SISP Guidelines, at unnumbered third page. In addition, the SISP Plan Description gives the Plan Administrator final discretionary authority in the administration of the Plan. The "decisions of the Plan Administrator with respect to all issues and questions will be final, conclusive, and binding on all persons." Plan Description, at 10. Defendant thus instituted a centralized administrative mechanism for the processing of the severance benefit claims occasioned by creation of the Alliance.

Plaintiffs have not produced any evidence to contradict Texaco's proof that the SISP required substantial and ongoing administration. Plaintiffs thus have not raised any genuine question of fact and the

criteria of *Fort Halifax*, that the more "self-defining" the terms of the plan, the less need there is for ongoing administration by the employer.

9. As Ron Boilla testified, in order to identify whether a job was in the same family, "[y]ou'd have to go back and see what their job is and what it's doing, and then take a look at other jobs around it to determine what the family is. We have a lot of analyst positions in all kinds of different areas ... you would have to look at the job, the area that they are in, and then make a judgment on it." Boilla Dep., at 23.

Court holds that the SISP qualifies as an ERISA plan.

## B. Plaintiffs' Promissory Estoppel Claim Fails

■ Plaintiffs argue some form of promissory estoppel, and appear to assume this theory is viable under ERISA.[10] Plaintiffs argue that Texaco is "bound" by the terms of the SISP and by Boilla's June 1998 letter approving Plaintiffs for SISP benefits. Plaintiffs' Response to Defendant's Motion for Summary Judgment [Doc. # 25], at 3. Even if the Boilla letter constituted final approval and not pre-approval, as Defendant argues,[11] Plaintiffs cannot claim they relied on the letter. Plaintiffs were unaware of the letter's existence at the time they filed suit. *See* Ray Dep., at 22. As Plaintiffs made clear in their depositions, the sole basis of their claim that they were approved for SISP benefits is the fact that Hudson, then the lubricants plant manager, assented to pass their request through the "proper channels." *See* Hartman Dep., at 45–47; Thorne Dep., at 18–19. Plaintiffs never obtained final approval of their request from the Committee, as the SISP Guidelines clearly required.

Without the support of the Boilla letter, Plaintiffs base their claims only on Hudson's oral representations that their jobs would be eliminated and her belief that they would be eligible for SISP benefits. However, "ERISA precludes oral modifications to benefit plans … claims of promissory estoppel are not cognizable in suits seeking to enforce rights to pension benefits." *Degan v. Ford Motor Co.,* 869 F.2d 889, 895 (5th Cir.1989) (citations omitted); *Weir v. Federal Asset Disposition Ass'n,* 123 F.3d 281, 289 (5th Cir.1997) (citing *Rodrigue v. Western and Southern Life Ins. Co.,* 948 F.2d 969, 971 (5th Cir.1991); *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1297 (5th Cir.1989); *Degan,* 869 F.2d at 895).[12] Thus, Defendant is entitled to judgment as a matter of law on Plaintiffs' promissory estoppel claim (assuming *arguendo* that claim is viable in the face of ERISA preemption).

## C. ERISA Preemption of Plaintiffs' Pleaded Claims

Since the SISP is an ERISA plan, ERISA completely preempts each of the state law claims asserted by Plaintiffs in this case. *See Perdue,* 7 F.3d at 1255–56 (holding plaintiff's breach of contract and common law fraud claims preempted by ERISA); *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1217–20 (5th Cir.1992) (holding plaintiff's claims for common law fraud, civil conspiracy, and breach of contract preempted by ERISA); *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1292–97

10. Plaintiffs have again failed to identify the statutory basis under ERISA for this claim. The Court nevertheless addresses the claim in the interests of judicial economy.

11. *See also* Powell Dep., at 17.

12. Plaintiffs also generally claim that they are entitled to SISP benefits because Texaco had a duty to prove the jobs offered to Hartman and Thorne in November 1999 were of the type that would disqualify them for SISP benefits, *i.e.,* that the jobs granted the same pay, were in the Plaintiffs' existing job families, and would not require relocation. While it is unclear how this contention advances any of the non-preempted claims Plaintiffs assert in this case the Court notes that this contention falls of its own weight. Plaintiffs cite nothing to support their proposition that Texaco had this burden of proof. Indeed, Plaintiffs were working in jobs that continued until their voluntary retirements. Defendant informed Plaintiffs that they would have jobs thereafter, and Plaintiffs did not inquire into any details. The November 1998 meetings, during which Plaintiffs were given general job assurances, were held to explain to Plaintiffs why they had been denied SISP benefits. The only logical inference was that the Alliance was offering Plaintiffs their existing jobs, or comparable ones in the same or nearby locations. Plaintiffs' arguments to the contrary are unsupported by evidence. Mere speculation is insufficient to raise a genuine fact question in response to a motion for summary judgment. Plaintiffs therefore have failed to meet their summary judgment burden on this argument as well.

(5th Cir.1989) (holding plaintiff's breach of contract claim preempted by ERISA and holding that promissory estoppel is not a cause of action under ERISA). Thus, Plaintiffs' state law claims must be dismissed. Plaintiffs have never sought leave to amend their complaint in this case to assert any ERISA claims for relief. The time for amendment of pleadings is long passed. Plaintiffs' Motion for Summary Judgment [Doc. #23] is therefore moot. Plaintiffs' summary judgment contentions are based on common law claims, which are not legally viable. The Court therefore does not reach any of the issues raised in Plaintiffs' Motion and that Motion is **denied.**

## IV. *CONCLUSION*

For the reasons discussed above, the Court concludes that Defendant's severance program is an ERISA plan, that Plaintiffs' state law claims are not legally cognizable in light of ERISA's complete preemption of the field, that the promissory estoppel claim lacks legal substance on the merits, and that Plaintiffs' Motion for Summary Judgment lacks merit, since Plaintiffs' claims must be dismissed. It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. #21] is **GRANTED.**

**ORDERED** that Plaintiffs' Motion for Summary Judgment [Doc. #23] is **DE-NIED.**