**J.M. "Jim" SMITH, Plaintiff,**

v.

**BAKER HUGHES INTERNATIONAL BRANCHES, INC., d/b/a Baker Hughes INTEQ International Branches, Inc., Defendant.**

**No. CIV. A. H–00–1632.**

United States District Court,
S.D. Texas,
Houston Division.

Feb. 26, 2001.

Michael H Johnston, Sullins Johnston et al, Houston, TX, for J M Jim Smith, plaintiffs.

James Alfred Southerland, Ogletree Deakins et al, Houston, TX, for Baker Hughes International Branches Inc dba Baker Hughes INTEQ International Branches Inc, defendants.

## MEMORANDUM AND ORDER

LAKE, District Judge.

Plaintiff, J.M. "Jim" Smith, filed this action on June 16, 1999, against defendant, Baker Hughes International Branches, Inc. (doing business as Baker Hughes IN-TEQ International Branches, Inc.), in the 234th Judicial District Court of Harris County, Texas.[1] Plaintiff alleged claims against defendant for breach of employment contract and denial of severance pay. Defendant removed the action to this court on May 15, 2000, asserting federal jurisdiction under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461 (West 1999). Pending before the court is Plaintiff's Motion for Remand (Docket Entry No. 4). For the reasons set forth below, plaintiff's motion will be granted.

### I. Standard of Review

■ 28 U.S.C. § 1447(c) provides for two grounds for remand: (1) a defect in removal procedure or (2) lack of subject matter jurisdiction. *Cuellar v. Crown Life Insurance Company,* 116 F.Supp.2d 821, 825 (S.D.Tex.2000). When considering a motion to remand the removing party bears the burden of showing that removal was proper. *Willy v. Coastal Corp.,* 855 F.2d 1160, 1164 (5th Cir.1988), *appeal after remand,* 915 F.2d 965 (5th Cir.1990), *aff'd,* 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). This extends not only to demonstrating a jurisdictional basis for removal, but also necessary compliance with the requirements of the removal statute. *Monterey Mushrooms, Inc. v. Hall,* 14 F.Supp.2d 988, 990 (S.D.Tex.1998) (quoting *Albonetti v. GAF Corporation–Chemical*

*Group,* 520 F.Supp. 825, 827 (S.D.Tex. 1981)).

■ Pursuant to statute, removal is generally available to a defendant in a "civil action brought in a State court of which the district courts of the United States have original jurisdiction" founded on the existence of a claim or right "arising under" federal law. 28 U.S.C. § 1441(a)-(b); *McClelland v. Gronwaldt,* 155 F.3d 507, 511 (5th Cir.1998). If at any time before final judgment, however, it appears that the district court lacks subject matter jurisdiction, the case must be remanded. 28 U.S.C. § 1447(c). Because removal jurisdiction "raises significant federalism concerns," *Willy,* 855 F.2d at 1164, courts must construe removal statutes "narrowly, with doubts resolved in favor of remand to the state court." *Value Recovery Group, Inc. v. Hourani,* 115 F.Supp.2d 761, 765 (S.D.Tex.2000) (quoting *Jefferson Parish Hospital District No. 2 v. Harvey,* 788 F.Supp. 282, 283–84 (E.D.La.1992)). If there is any doubt that a right to removal exists, ambiguities are to be construed against removal. *J.R. Laughead, Inc. v. Air Dayco Corp.,* 942 F.Supp. 339, 340 (S.D.Tex.1996).

### II. Background

Plaintiff, J.M. "Jim" Smith ("Smith"), was hired by Baker Hughes INTEQ International Branches, Inc. ("Baker Hughes") on December 12, 1997,[2] as manager of a joint venture company that Baker Hughes was creating in Algeria. Smith began working for the company on January 5, 1998.

In early 1999 Baker Hughes was suffering economic difficulties in Algeria. Company revenues had declined by over $100,000 in one quarter, and drilling activity had decreased by 50% between January

---

1. Cause No.1999–31129, Exhibit A attached to Defendant's Notice of Removal of Action, Docket Entry No. 1.

2. *See* Exhibit B attached to Plaintiff's Motion for Remand, Docket Entry No. 4.

1998 and February 1999.[3] As a result, Baker Hughes terminated a number of employees in Algeria as part of a reduction in force. Smith was terminated by Baker Hughes on April 23, 1999. Baker Hughes informed Smith that the reason for his termination was that his "position in the Mediterranean Region of Baker Hughes INTEQ has been made redundant due to changes in the business."[4]

In his Original Petition in state court Smith alleged a claim against Baker Hughes for breach of employment contract. In his First Amended Petition, Smith added an alternative claim for denial of severance pay. According to Smith, "under the policies and benefits of Baker Hughes," upon termination of his employment he was entitled to a severance package and other benefits in the amount of at least $22,000.[5] Baker Hughes then removed the case to this court, claiming jurisdiction under ERISA on the basis of Smith's severance pay claim.

### III. *Analysis*

The issue before this court is whether the court has jurisdiction under ERISA over Smith's claims. Baker Hughes contends that Smith's state-law claims are completely preempted by ERISA. Smith argues that this court has no federal question jurisdiction over this action because Baker Hughes's severance policy does not fall within ERISA's definition of an "employee welfare benefit plan." Smith also argues that this court lacks jurisdiction under ERISA because he is not a "participant, beneficiary, or fiduciary" under any plan. *See Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 103 S.Ct. 2841, 2855, 77 L.Ed.2d 420 (1983) (only participants, beneficiaries, or fiduciaries are entitled to seek relief under ERISA's civil enforcement provisions).

Baker Hughes responds that Smith is indeed a "participant" under ERISA, since that term means "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). To determine whether federal jurisdiction exists in this case, however, the court must first decide whether Baker Hughes's severance policy constitutes an "employee benefit plan."

### A. Federal Jurisdiction Under ERISA

■ A defendant may not remove an action from state court to federal court unless the plaintiff could have originally filed his action in federal court. *See* 28 U.S.C. § 1441(a)-(b); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Absent complete diversity of the parties, a federal question must be present in order for removal to be proper. *See Caterpillar, Inc.*, 107 S.Ct. at 2429. Federal courts typically determine the existence of federal question jurisdiction by applying the well-pleaded complaint rule. *McClelland*, 155 F.3d at 512. Under the well-pleaded complaint rule the federal question forming the basis of the federal court's subject matter jurisdiction must appear on the face of the complaint. *See Anderson v. American Airlines, Inc.*, 2 F.3d 590, 593 (5th Cir.1993). A defense premised on federal law, including the defense of preemption, will not support removal even if the complaint facially anticipates the defense and all parties concede that it is the sole issue in dispute. *See Caterpillar, Inc.*, 107 S.Ct. at 2430; *Aaron v. National Union Fire Insurance Company*, 876 F.2d 1157, 1161

---

**3.** Deposition of James Murray "Jim" Smith, Exhibit A attached to Defendant's Motion for Summary Judgment and Response in Opposition to Plaintiff's Amended Motion for Summary Judgment, Docket Entry No. 18, at pp. 152–154.

**4.** Plaintiff's First Amended Petition, Exhibit C attached to Defendant's Notice of Removal of Action, Docket Entry No. 1, at p. 3.

**5.** *Id.* at p. 7.

(5th Cir.1989); *Messina v. Tri–Gas Inc.,* 816 F.Supp. 1163, 1166 (S.D.Tex.1993).

The Supreme Court has recognized as an independent corollary to the well-pleaded complaint rule, however, the complete preemption exception. *Caterpillar, Inc.,* 107 S.Ct. at 2430. This exception applies when Congress defines limited categories of state law claims that are so completely preempted that any civil complaint raising this select group of claims is necessarily federal in character, no matter how it is characterized in the relevant pleading. *Kramer v. Smith Barney,* 80 F.3d 1080, 1082 (5th Cir.1996) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)); *see also Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998). In such cases removal is proper because Congress has manifested an intent to make them removable. *See Messina,* 816 F.Supp. at 1166. Under the complete preemption exception "a statute's preemptive force may convert an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Kramer,* 80 F.3d at 1082–83.

ERISA preempts virtually all state laws relating to employee benefit plans. *See* ERISA § 514(a), 29 U.S.C. § 1144(a) ("[T]he provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to an employee benefit plan."). It does not follow, however, that any state court petition that alleges state law causes of action, but which implicates at some level an employee benefit plan, is removable from state to federal court. *Gabner v. Metropolitan Life Ins. Co.,* 938 F.Supp. 1295, 1300 (E.D.Tex.1996). To be preempted by ERISA a state-law claim must be redressable under the civil enforcement provisions of ERISA § 502(a), 29 U.S.C. § 1132(a). *See Metropolitan Life Ins. Co.,* 107 S.Ct. at 1548. Thus, for a state claim to be removable under ERISA it must:

(1) "relate to" an employee benefit plan within the meaning of ERISA § 514(a), and

(2) be redressable under the civil enforcement provisions contained in ERISA § 502(a).

*See id.* at 1546; *Kramer,* 80 F.3d at 1083; *Anderson v. Electronic Data Systems Corp.,* 11 F.3d 1311, 1313 (5th Cir.1994). When both of these conditions appear, a federal court has subject-matter jurisdiction even though a well-pleaded complaint alleges only state-law claims.

## B. Baker Hughes's Severance Policy

Baker Hughes contends that Smith has alleged a claim for denial of severance pay pursuant to Baker Hughes's written severance policy. Baker Hughes argues that its severance policy is an "employee welfare benefit plan" within the meaning of ERISA and that this court therefore has federal jurisdiction over all of Smith's claims. Smith does not deny that he has raised claims for severance payments. He argues instead that the severance plan at issue is not an "employee welfare benefit plan" as defined by ERISA. *See* 29 U.S.C. § 1003(a). Consequently, Smith argues that he has not raised claims that "relate to" an ERISA benefit plan.

Although severance pay plans may constitute employee benefit plans subject to ERISA, *see Massachusetts v. Morash,* 490 U.S. 107, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989), the fact that Baker Hughes's severance policy involves employee "benefits" does not necessarily mean that they are part of an employee benefit "plan." *See Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987).

A severance policy does *not* constitute an employee welfare benefit plan under ERISA if:

(1) it simply requires that the employer make a one-time, lump-sum payment triggered by a single event that might never occur,

(2) it does not require an administrative scheme to meet this obligation, and

(3) the employer does not assume responsibility for making regular benefit payments.

*See Fort Halifax,* 107 S.Ct. at 2218; *Fontenot v. NL Industries, Inc.,* 953 F.2d 960, 962 (5th Cir.1992); *see also Wells v. General Motors Corp.,* 881 F.2d 166, 176 (5th Cir.1989). Baker Hughes does not dispute that the severance payment at issue in this case would be a one-time, lump-sum payment triggered by a single event (i.e., a reduction in workforce) that might never occur. Nor does Baker Hughes dispute that it has no responsibility for making regular benefit payments to Smith. Baker Hughes argues, however, that its severance policy is a benefit plan under ERISA because an "administrative scheme" is required to implement the policy.

The Baker Hughes INTEQ Severance Policy states in relevant part: [6]

**3.0 SEVERANCE PAY**

Employees terminated due to a reduction in workforce will receive severance benefits as outlined below only after a Waiver and Release Agreement is executed.

• Less than two (2) years of continuous service—two (2) weeks pay

-or

• One (1) week pay for each full year of continuous adjusted service plus the applicable prorated amount for any partial year of service at the time of layoff up to a maximum of twelve (12) weeks.

Baker Hughes contends that under this severance plan, an eligible employee will receive severance pay only if he meets certain conditions. In order to determine each employee's entitlement to severance benefits under the policy, Baker Hughes argues, a "plan administrator" must make a series of individualized determinations that require the exercise of judgment and discretion. According to Baker Hughes,

some of these necessary determinations include: whether there has been a "reduction in force," whether the employee is terminated as part of the reduction in force, whether the employee elects to retire or accept other employment within the company in lieu of termination, the amount of the employee's base pay on the date of the reduction in force, the length of the employee's continuous service with the company, and whether the employee has executed a waiver and release agreement. Baker Hughes argues that these determinations constitute an ongoing "administrative scheme" that render the severance policy a "plan" under ERISA.

In support of its position, Baker Hughes cites *Schonholz v. Long Island Jewish Medical Ctr.,* 87 F.3d 72, 76 (2d Cir.), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 511, 136 L.Ed.2d 401 (1996), for the proposition that the need to determine whether an employee "was involuntarily terminated" requires ongoing administration. Baker Hughes's characterization of the case's holding is overly broad, however. In *Schonholz* the determination of an employee's termination status was but one of several factors that the Second Circuit considered in finding an employee benefit plan under ERISA. That determination, by itself, does not establish the type of ongoing administrative scheme required of an ERISA plan.

■ The court is not persuaded that Baker Hughes has demonstrated the existence of an ongoing administrative scheme in connection with its severance plan. The determinations that Baker Hughes argues must be made on an individualized, employee-by-employee basis, involve little more than the retrieval of information from an employee's personnel file. Baker Hughes's severance plan simply requires the disbursement of one-time, lump-sum payments to employees upon termination due to reductions in force.

**6.** *See* Exhibit 1 attached to Defendant's Supplemental Response in Opposition to Plaintiff's Motion for Remand, Docket Entry No. 11, at p. 1.

In *Fort Halifax* the Supreme Court held that a one-time, lump-sum payment triggered by a single event requires no administrative scheme to meet the employer's obligation. According to the Court, an employee benefit "plan" encompasses only those benefits that require the establishment and maintenance of a separate and ongoing administrative scheme. 107 S.Ct. at 2217. The Court also noted that the goal of ERISA's preemption provision is to provide a single set of administrative practices for benefit plans in order to avoid a patchwork scheme of regulation. However,

> This concern only arises ... with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation. It is for this reason that Congress preempted state laws related to plans, rather than simply to *benefits*. Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation.

107 S.Ct. at 2217 (emphasis in original).

> To do little more than write a check hardly constitutes the operation of a benefit plan.

107 S.Ct. at 2218 (footnote omitted).

Similarly, in *Fontenot v. NL Industries, Inc.*, the Fifth Circuit held that a severance pay plan that provided for a lump-sum cash payment "as well as a three year continuation of certain benefits" to executive employees was not a "plan" within the meaning of ERISA. 953 F.2d at 961. In so holding, the court emphasized that the one-time obligation of the employer to provide a severance payment to departing employees had not necessitated the creation of an ongoing administrative scheme and therefore had not implicated ERISA under the *Fort Halifax* test. In order to qualify as an ERISA plan, a severance pay

plan must possess indicia of continuing administration by the employer. *See Wells*, 881 F.2d 166; *Fontenot*, 953 F.2d 960; *Perdue v. Burger King Corp.*, 7 F.3d 1251 (5th Cir.1993); *Hartman v. Texaco, Inc.*, 119 F.Supp.2d 668, 673 (S.D.Tex. 2000).

Baker Hughes also cites *Whittemore v. Schlumberger Technology Corp.*, 976 F.2d 922, 923 (5th Cir.1992), for the proposition that a management policy manual that provided for severance pay in lieu of a notice of termination was an ERISA plan. In *Whittemore* the Fifth Circuit found that the severance plan at issue was an ERISA plan because it "plainly required some sort of an administrative set-up in order to make payments to employees." 976 F.2d at 923. Moreover, the Schlumberger plan "was ongoing and was not created for the one-time event of closing business operations." *Whittemore v. Schlumberger Technology Corp.*, No. H–89–3586, Memorandum and Order at 4 (S.D.Tex. Mar. 24, 1992), *aff'd*, *Whittemore*, 976 F.2d 922. Baker Hughes's severance policy, on the other hand, applies only if an employee is terminated as a result of a reduction in workforce and is thus distinguishable from the severance plan in *Whittemore*. Baker Hughes's policy bears greater resemblance to the policies at issue in *Fort Halifax*, *Fontenot*, and *Wells*, all cases in which an ERISA plan was not found despite the fact that the employer had to make severance payments to employees.[7] *See, e.g., Wells*, 881 F.2d at 176 (procedure by which employees could elect to receive a one-time lump sum payment if they ceased working at the plant not an ERISA plan).

The court concludes that since no administrative scheme is required to implement Baker Hughes's severance policy, the policy is not an "employee welfare benefit plan" under ERISA. Since no ERISA plan relating to Smith's claims exists,

---

**7.** This court has previously noted that, as exemplified by the severance policy in *Fort Halifax* and in the instant case, "the more 'self-defining' the terms of the plan, the less need

there is for ongoing administration by the employer." *Hartman*, 119 F.Supp.2d at 674 fn. 8.

there is no federal question jurisdiction to hear this case. Accordingly, remand of Smith's case to state court is appropriate.

### IV. *Conclusions and Order*

Because Baker Hughes improperly removed this action, Plaintiff's Motion for Remand (Docket Entry No. 4) is **GRANTED**. This action is **REMANDED** to the 234th Judicial District Court of Harris County, Texas.